*72 OPINION of the court, by
Judge Bibb.
an opinion has been pronounced in the appellate court, Gf the iast resor^ that opinion should not be changed, but upon a strong and clear conviction that it was erroneous» The decree formerly pronounced herein, was 0pened because the members of the court who rendered it had serious doubts upon the correctness or the con-elusions which had been drawn from the evidence, and chejudge who has since resigned his seat, was the first to express his dissatisfaction.* A full court have examined the evidence, bearing in mind the results upon wb'cb the former opinion is predicated : for if those results are correct, the conclusions are irresistible.
The entry of Worthington, which was supported by tjje court below, but destroyed by the former opinion of this court, is for one thousand acres, “ about one mile nearly an east course from the main fork of Brashears’s {.j-gg]^ along the road that leads to Harrodsburg, from Beargrass Station” — May 19th, 1780.”
The important points of collision and controversy, are . The road to Harrodsburg from Beargrass Station. 2d. The main -fork of Brashears’s creek. The other questions in the cause, are attendant on those two,
an(j ¿plsappear or present themselves according to the ,..r/-i • ■ , r decision oi the principal questions in the one way or the other.
There were several stations on Beargrass, before the entry of Worthington was made, each having a well known appellation ; but neither of them had been distin-gpishgj or pre-eminently known as the “ Beargrass Station.” But as the roads or traces from the settlements on Beargrass, which were travelled to Harrods-burS> unbed before they touched the waters of Bra-shears’s creek, the use of the singular instead of the plural, or of an indefinite station on Beargrass, can pr0¿uce na ambiguity in this entry. Upon the first *73 point the question is, did the expressions used by the locator in making his entry apply definitely and exclusively to one road, or ambiguously and with equal propriety to txvo or more roads ? There is a clear united current of evidence carrying full faith and credit, that the trace marked out by Harrod, in the year 1778, was the road well known and generally travelled from Har-rodsburg to Beargrass, and trom Beargrass to Harrods-burg ; that it had been travelled by small parties, and large companies ; that'it was known to the people of Lexington, Harrodsburg, M’Afee’s and Beargrass Stations. This it is true was well known by the name of Harrod’s trace ; but the omission of the name ought not to vitiate the entry, because the description given ot it was sufficient to enable the holder of a land warrant, to learn from the slightest enquiry what road was intended. It has never been decided, that a locator was bound to give the best description possible ; it is sufficient if his description is not misleading, but certain to a common intent, and would lead an enquirer, using reasonable diligence, to the objects intended. It appears from the testimony, that any one who had asked in the year 1780, for “ the road that leads from Beargrass, or any of the Stations on Beargrass, to Harrodsburg,” would have been directed to Harrod’s trace, at any of the Stations before mentioned, or at Boone’s Station. For there was a road, and only one, at the making of Worthing-ton’s entry, which was generally known and used, “ as the great highway” (to use the language of the witnesses) between the settlements on Beargrass and Harrods-burg. Boone’s Station, was erected on the middle fork of Brashears’s creek, some distance above Harrod’s trace, some time in the month of April, 1780. From Bear-grass towards Harrodsburg, a trace turned out of Har-rod’s trace and lead to Boone’s Station. A large Buffalo trace came from Leestown, and fell into Harrod’s trace, a little below M’Afees ; this latter trace was used between M’Afee’s and Bailey’s settlement on Hammond’s creek, or Bailey’s run. Hence it is easy to conceive, how some of the witnesses who saw these two traces, falling into Harrod’s trace, might have conjectured, as they say they did, that the trace from Leestown, was Bone’s trace from his Station. But Robert Tyler, farther explains this mistake, by declaring that in April *74 lf80, he travelled from Boone’s Station to Harroás* hurg, and the way was blazed, but there was no beaters path. When it became known and beaten, it was a more circuitous way from Beargrass to Harrodsburg, ti,an Harrod’s trace, and would have been more properly described as the trace from Boone’s Station, not from “Bearirrass Station f to Harrodsburg. The third trace. , , , ° 1 lt: exiStecl at all, as sworn by the witness, was unknown to fame, and too obscure to deserve notice. The three great branches of Brashears’s creek are so ne£itN equal in size, that no person by inspection at the crossingofthe road from Beargrass toHarrodsburg, could ^eterrn’ne with any reasonable certainty, which was the u main fork.” Nature has not there distinctly marked either as the great, principal, or capital stream. And jt js admitted, that to have required of the holder of a , , . , I , , r ian<a warrant, to explore those forks to their sources, tor the purpose of avoiding Worthington’s entry, would have been an unreasonable requisition. But if corn-mon consent and the general understanding of those who had explored, or were acquainted with those strearns had fixed, upon Clear creek, as the main fork i , ’ . r, . . ’ * however arbitrary such opinions may have been at first, yet when they became generally prevalent, the locator was as much at liberty to resort to such a description, as to the name Brashears s creek, which was equally arbitrary, and without any foundation in the nature of R would be very unreasonable to expect and' require that a locator should so describe the objects called for, as that another, taking his words upon paPer> cou^r by the help of them alone, without any en-quiry in pais, and as a solitary wanderer, find out, and' know as soon as found, the objects intended. The call £or Brashears’s creek is confessedly of good general description ; not because its waters murmured to the ears, or curled and dimpled in cyphers to the eyes of lbose who approached it, the name which it bears ; but because the common consent of those who knew it had so called it, and any person who made reasonable enquiry of his fellow-men, could have been directed to it, in a manner clearly marking the identity. So of the “ main fork although nature had impressed upon it nQ characteristic, by which the uninformed stranger would have known it at first sight, yet if, the general *75 opinions of those acquainted with the waters, had fixed upon it, so that by reasonable enquiry, others who wished, might have ascertained which it was, the locator has done what the law required. The uniform current of decisions upon our land titles has been so long in this channel, that it has become a great land mark, a settled rule of property. No decision in this country has ever asserted that an entry must necessarily contain such a reference to objects of natural notoriety and identity, as that a person could go from the office with a copy of the entry, and by that find its position, unaided, by any information drawn from his fellows in society. The sole question, therefore, is not whether nature had so distinguished the forks, as that every person, at first view could have determined that the one or the other ought to be called the main fork : but when that question is determined negatively, the next question presents itself; had reputation, and the general understanding of those who were acquainted with the forks, distinguished and fixed upon one as. the main fork, at the date of Wor-thington’s entry ? If so, whether from circumstances, natural or adventitious, or from mere arbitrary caprice, is quite indifferent, If an entry depended for support on the proof that a fork was reputed to be a left hand fork, when, according to a prevalent custom among all * c . • i r r . **. u i 1 men of accounting the forks oi streams, it should appear to be a right hand fork,.the evidence would have to stem a strong current of incredibility, which would seem to set against the witnesses, and in a case where the locator of the interfering claim would not be bound to enquire (unless he had some great.warning) whether reputation or common opinion had, in. that particular instance, departed so widely from general custom, and gone to war with second nature. In the case before us, it is admitted, that in fixing upon the middle fork.as the main fork, general opinion would not be at war with common, sense, nor with any general notions which have heretofore prevailed, with respect to the fitness of names, to things. Moreover, where a subsequent locator could not determine by inspection which was the main fork,. as called for, that would seem to be the very case in which he would enquire of those who were acquainted with the streams. It is beyond question, that below the junction of the three forks, the stream was known and *76 called Main Brashears’s creek, and that Gist’s creek and Bullskin were exclusively distinguished by those names respectively, by all those who were acquainted with those waters, previous to the date of Worthington’s en-trJS and since. With respect to the middle fork, gene-rai reputation appears not to have concurred and united so intimately in designating it by one exclusive appella- . -pi. c n ? s , -, . - r,r , tIon> 1 ae names or Brasnears s creek, Main fork, and Clear creek, were used amongst those who were conversant u,)on those waters, before and after the 19th of 1780. The mind is persuaded, by the testimony adduced, that each of those designations of the middle /iri ras i(J\¿ doiun on the plat ) had circulated exten-slve‘y* It is easy to trace the description ot “ the mam fork” to a rational source. In exploring the stream cal--^a^a Brashears’s creek, no difficulty would arise at ^e mouth of Gist’s creek, which stream to ascend as the main stream, for Bullskin and the middle fork had united several miles above, either of which was equal to Gist’s creek. At the mouth of Bullskin the streams are nearly equal in appearance ; but to those who had explored those two streams towards their sources, the competition would have been decided in favor of the middle fork as being the capital stream. After Bull-skin had obtained its name, as well as Gist’s creek, the main fork was an easy, if not a consequent distinction for that great fork, which, as yet, had no arbitrary distinction, depending upon common consent. That public opinion had decided in favor of the middle fork as being the capital stream of Main Brashears’s creek, is strongly presumable from the name “ Brashears"'s creek ,” by which it was known and called by a number of persons, and even by many of those who knew the other names, “ Clear creek” and “ Main fork.” This leads us to the principal question in the second branch of the subject, viz :
not'gen-¡,rsuy known, wilt not render en^ being the great and general córd — '’m'Ctoc. ⅛’5 heirs m. ⅛«⅛ and Star. vs. CarUnd, t°fi
0 «afonabiediii-Bence- ar explore the three forks of Braihears’a creek to theic sources, to as» certain the main fork, un« and Kenton v$m Lee, assignee of Toungy ante iS —••M’Crackin't heirs vs. Craig9 Pr. Dec* 405^* Smith vs. Tur» ley, fofi Speed vs. fVilfn Pn Dec. 91.
^ ccon>”“J g°neral ,eputation had fised on one as the main fork, it is sufficient, ai-thoupti nature had not distin-guhhed it as ~ahaCl¡w Jobnfin's heir's, ante 58 — AT-‘Inte 6 — Br™’n amt 5Smith "w. Bradfc.,-d&ah. Hugh. 55.
.evidence to. make a right éw fork a left re^utadoif by must be ’very forcible.
In such case another locator would not have been bound to enquire, withing, whether reputation had so ⅛1 departed from general euftom.
tureC 'had^6 not diftinguiffied the main fork, feems to^be the which «nquhy ihouidbemade, had fixed raTt!
One fork retaining the íheTu °Ledr-cumftance to Siew that repu-tetionha^i fixed main fork.
R flden<;e ⅜ ftations of wit-«fies who cai-^*k ltan™£« circumftance to <hew it could enquiry,
Witneffes, to fing that they called !t n,ai“ were prefent wh'n !t was fo "" fmg that either o{ the other‘ ^mlinfork thefe circum-ftancescombm. ed are fufficienC t0 fix the mairi fork_Vide Crew's heirs vs. ««”44° — ^- vans’s heirs Manfin's exscu.
and one mile talien'
. . ^e^Gmn'vs] fVaifin, pojl ^uthfs B°™les ⅜⅛0- versus Dec.
t calls for ° road, refers ⅛ 3 distance be-toadfthl distance is to he taken along the meanders of the road and not on a direct line.
ted'-^the^Ni" furv'ey to oe one mile from the fork, m a
Same princi pies, Green m, Z)avl%TLock hart's ' heirs, Har. 368»
Are we bound by the evidence to decide that the “ main fork” had so far obtained with those who were acquainted with the waters of Brashears’s creek, as that a reasonable enquiry, would have satisfied the holder of a warrant, xvhich was meant by “ the main fork,” when used in Worthington’s entry ?
Let it not be forgotten, that not a solitary witness has said that either Bullskin or Gist’s creek, had ever *77 been called or considered as the main fork. Thirteen witnesses, in various modes of expression, bear testi-many that the middle fork, now called Clear creek, was understood to be the main fork, before and after the date of Worthington’s entry. John Williams became acquainted with it in 1775, and says he considered it the main fork. Benjamin Vancleave says, he was acquainted with it as earlv as 1776, and >t was a then considered the main fork.” John Robinson says, that Samuel M’Afee told him between the 7th and 20th of May 1780, when they came to this fork, travelling to Har-rodsburg with others, that it was considered the main fork, and was in the same month likewise so informed by George and Robert M’Atee. Andrew Gregory says, he became acquainted with it in the last of April or first of May 1780; some called it Clear creek, some Bra-shears’s creek, “ but I considered it to be the main fork.” George Yunt declares he believed it to be the main fork. Robert Johnson, speaking of the fork on which Boone’s Station was erected, savs that fork was sometimes called Clear creek, sometimes Brashears’s creek ; he considered it then, (anuding to April and May 1780) the main fork, and yet does. James Guthrie swears, that in the spring 1780, he understood Boone’s Station was erected on the main fork of Brashears’s creek. John M’Cown says, he had understood from the information of hunters, that the middle fork, was the main fork, and found it so when he became acquainted with it in the fall 1780. James M’Afee declares, that Boone’s Station, was always considered to be on the main fork of Brashears’s creek. David Williams says, he travelled from Beargrass to Harrodsburg, in April 1780, with a large party of families ; he noticed the three forks ; the middle fork was then called the main fork. Adam M’Connell deposes, that on the 12th of May 1780, “ he started in company with about 30 others, from the Spring Station, for Lexington, by way of Boone's Station, &c. — .he then understood, that the Station was on the main fork of Brashears's creek ; it was called Bra-shears's creek. Moses Boone says, “I generally understood, and generally conceived, what is now called Clear creek, tobe the main fork of Brashears’s creek.” Josiah Boone says, that during the year 1780, it was “ generally called, and known to be the main fork of Brashears’s creek.”
*78 Such are the depositions of men acquainted with Bra-shears’s creek and its waters, anterior to the date of Wor» thington’s entry. The result from the great mass of evidence, (spread over nearly one hundred and fifty pages,) seems to be, that the impression was very general, if not universal, during the-whole of the year 1780, and before, among those who were acquainted with these waters, that the fork now called Clear creek, was the main fork of Brashears’s creek ; that in consequence of that opinion, it was called Brashears’s creek, more generally than Clear creek, at that period, although it has since lost the name of Brashears’s creek.
We cannot believe from the evidence, that any enquirer, in the spring 1780, would have been directed to Bullskin, or to Gist’s creek, as the main fork of Bra-shears’s, creek ; because each had a single appropriate name, and no one seems ever to have entertained the idea, that either of those was the main fork. But from the number of individual opinions, in connection with,the evidence of those who depose to. information, general consideration and reputation, united to the strong presumption growing out of the residence of those persons, or some of them, at M’Afee’s and Boone’s, the nearest, or at least very convenient Stations, we feel bound to decide, that an enquirer, using reasonable research, or ordinary investigation, would have been directed to the middle or Clear creek fork, as the main fork called for in this location. In fine, we think that Harrod's trace and Clear creek, as. represented, and so named on the plat, were sufficiently alluded to in the entry under consideration ; and that the former opinion, declaring the location insufficient in those respects, is erroneous. We would not lightly change an opinion, which has been once pronounced; but when convinced, as it is our duty, so we rejoice, to correct and renounce an error.
According to well established precedents, the word “ about,” is to be rejected as inoperative, and one mile from the main fork-, must be regarded as one of the lor cative calls. But whether this mile is to be taken on the; road with the meanders, or upon a direct line, has been made a query : and it has been farther questioned, whether that point, when ascertained, is to be the nearest approximation of the survey to the fork¡ or to be equidistant front the extremities.
*79 We have no difficulty in deciding it as a general rule, that when an entry calls for a road or trace, and has reference to an intermediate distance between two objects on that road, the meanders, and not a direct line, must govern the admeasurement. When a road is mentioned and a distance to an object on it, the mind of every man of common sense takes the road, and follows it as the safest and most infallible guide. Where a mathematical point is required on a road at a given distance, common sense would blush for that sophistication, which would attempt to find it by taking the bearings and distances along the meanders of the road, protracting, taking the given distance with the dividers, and applying it to the plat, taking the course of the direct line, then running the line according to this experimental course, and measuring the distance on the ground. And when this direct line, so taken, was applied to the ground, the distance would fall short of, or overreach the road ; by reason of the inaccuracy of instruments, or because the meanders of the road had been taken, not on the perfect plain, or because the direct course was over an uneven surface, and thus the operator must begin again to search for the point required. Whereas the first ad-measurement along the meanders of the road, would at once have ascertained the point required. But in the present case, there is not a loop to hang a doubt upon, for the entry itself uses the expression “ along the road.”
The location of 1000 acres of land, one mil® from the main fork, &c. excludes the idea of including the point on the road within the survey at equal distances from, the exterior boundaries j for then the survey would run. back upon the road within less than half a mile of the main fork, and only 500 acres would be one mile from the stream.
It appears from the plat, that Worthington’s 1000 acres, surveyed by taking a point on the road, one mile from the main fork, and thence constructing a square eastwardly, with lines parallel, and at right angles, to the general course of so much of the road as the survey will include, the said general course dissecting the survey, includes the whole of the appellee’s 500 acres in controversy : and the circuit court, without stating particularly how Worthington’s entry ought to have been *80 surveyed, decreed in favor of the appellee, the whole of the said 500 acres, which he held under the said entry.
It is therefore decreed, and ordered, that the former opinion and decree of this court, pronounced Upon the premises, be set aside, and holden for nought : that the said decree of the circuit court be affirmed ; the suit remanded to the said circuit court, that the interlocutory decree, from which an appeal was taken by consent, may be carried into effect, and made final.

 Note. — «Judge Trimble resigned his seat in vacation — Judge Bibb was absent when the former opinion was inade in the cause^