Baldwin, Justice,
 

 delivered the opinion of the court. — The subject of this controversy is a tract of land, situated on Kingston fork of Licking creek, and Buck-lick creek, a branch thereof. Stith, the complainant below, claims title under an entry made by Jenkin Phillips, on the 18th of May 1780, in the following words. “ Jenkin Phillips enters one thousand acres on the south-west side of Licking creek, on a branch called Buck-lick creek, on the lower side of said creek ; beginning at the mouth of the branch, and running up the branch for quantity, including three cabins.” A survey was made on this entry, on the 20th November 1795, taking Buck-lick branch, reduced to a straight line, as its base, and laying off the quantity in a rectangle on the north-west side of Buck-lick. A patent was granted to Phillips on this survey, on the 26th of June 1796, who, on the 8th of February 1814, conveyed to Stith 666 acres thereof, including the land in controversy. Stith was then in possession of the land, under the circumstances which will be hereafter referred to.
 

 The appellant claimed under an entry made by Francis Peyton for 1000 acres, a survey on the 9th of October 1784, and a patent on the 24th of December 1785 ; so that the case presented was, of Stith claiming the prior equity against the elder grant, -which, it is admitted, carried the legal title. No question arose on the validity of Peyton’s entry, as his elder grant was conclusive, unless an equity arose in Phillips, by his prior entry ; but the validity of this entry was questioned by the appellant, on several grounds, involving no general principles which are necessary to be settled by the court, but only those arrising on matters of fact and detail, which have no bearing on the merits of the case.
 
 We
 
 entertain no doubt of the validity of the entry : its calls are sufficiently descriptive, according to the well-established principles of this, and the courts of Kentucky, and give Phillips the prior equity to the land, which has been duly followed up and consummated by a grant, within the time required by the *laws of Virginia and r¡¡¡ Kentucky, without any
 
 laches
 
 which can impair it. 1
 

 This entry was much contested, both parties objecting to the survey as executed in November 1795. The circuit court were of opinion, that the entry ought to be so surveyed, as to make the line following the general course of Buck-lick, the centre, instead of the base line of the survey, and to lay off an equal quantity on each side, in a rectangular form, according to the rule established by the court of appeals in Kentucky, in Hardin 59, 367 ; 1 Bibb 79, 107 ; 2 Ibid. 122 ; 4 Ibid. 153, 383 ; and in this court, in 2 Wheat. 323, with which we fully concur. As the survey of 1795, and the
 
 *314
 
 one directed by the circuit court, both, embrace all the land in dispute about which any contest arises, it is unnecessary to not.ce them minutely, as in our opinion, the entry and survey of Phillips gave him an equitable title which attached to the land, elder than Peyton’s, and would entitle the complainant to a decree ; unless the case discloses such facts as, independent of the original titles, pi-esent a bar to the relief he asks.
 

 It is alleged by the appellant, that one Jeremiah Wilson, in the year 1*792 or 1*793, came to the land in question, within the lines of Peyton’s patent, and resided there until the month of March 1*795, when he took a lease for five years from the agent of Peyton, and continued to reside there for some years ; that from Wilson’s first settlement, there was a continued uninterrupted possession of the land by tenants, and persons holding under Peyton and his heirs, till Stith, the complainant, took possession, as tenant of Peyton’s heirs, under an agreement with one Mitchell, who acted as their agent, under a verbal authority from some of them ; and that he remained there until December 1S13, when possession was demanded of him on behalf of the appellants, which he refused to deliver up. Whereupon, a warrant of forcible entry and detainer was, on their complaint, issued by a justice of peace, on the 2*7th of January 1814, and an inquisition taken on the 1st of February, finding Stith guilty; but that on a traverse of the inquisition, in April following, he was acquitted. An ejectment was then brought against him by the appellants, and judgment rendered for the plaintiffs, at the *4 1 November term of the circuit court *1816 ; when the present bill was •' filed, praying for an injunction against further proceedings on the ejectment, and a conveyance of the legal title to the land recovered. An injunction was ordered. The respondents, in their answer, allege, that the complainant was put into possession, as the tenant of their ancestor, by his agent; but afterwards took protection under Jenkin Phillips, with the fraudulent purpose of cheating and defrauding him.
 

 To this answer, a special replication was put in by the complainant, averring that he did not enter as tenant aforesaid; and sets up the proceedings of forcible entry and detainer, and his acquittal; and relies on them for further replication in bar of the allegation. An amended answer was, by leave of the court, and on terms, afterwards filed, averring that the complainant rented the land and entered thereon as the tenant of Peyton, and continued to reside as such tenant, until he purchased from Phillips ; and that he ought not to be permitted to set up any adverse title, until he would surrender possession to the respondents. They rely on their uninterrupted possession, plead the act of limitations of 1809 as a bar to the relief sought by the bill, and aver, that the bill ought not to bo sustained, as the complainant is colluding with another, contrary to every principle of morality.
 

 To this amended answer, the complainant demurred : 1. Because the act of 1809 was a violation of the compact between the states of Virginia and Kentucky. 2. If the law is not void, the respondents cannot avail themselves of it, as they were not, and the complainant was, settled on and actually in possession of the premises in question, when the bill was filed ; holding and claiming under the title set forth in his bill. 3. That the respondents had not the actual and continual possession for the number of years required by the law, next preceding the filing of the bill, but were ousted and possession held by complainant. 4. That the complainant and
 
 *315
 
 respondent were in actual litigation, in the action of ejectment, of their relative rights under their titles, on the 1st January 1816, and long before, and until the filng of this bill. On these pleadings, and a great mass of depositions taken in the cause, the circuit court rendered a decree for the complainant, i
 

 On a careful examination of the whole record, we are ’'‘abundantly r![t satisfied, that the appellants have fully established the- fact of the *• tenancy of Stith, at the time he entered on the land. It is positively sworn to by three witnesses, and contradicted by none. His demurrer to the amended answer admits it most distinctly; as well as the continuance of the tenancy down to his purchase from Phillips. If this part of the case rested only on the evidence in the cause, unsupported by the demurrer, we should require nothing more to satisfy our minds ; but connected with the solemn admission on record, it presents a case cleared of all possible doubt. The agreement by which he rented the land, was for one year, at a rent of twenty dollars, payable in November 1811. By continuing in possession, he remained a tenant from year to year, his possession being, in law, the possession of Peyton or his heirs, with all the relations of landlord and tenant subsisting between them in full force.
 

 It appears, that Stith refused to surrender up the premises, on a demand made by the agent of Peyton, in December 1813 ; in consequence of which, he instituted a proceeding before a justice of the peace, in pursuance to the law of Kentucky relating to forcible entry and retainer. 4 Litt. Laws 182. This law contains provisions similar to the statutes of Ric. III., adopted or substantially re-enacted in all the states ; and authorizes the same proceedings against tenants, who, aft'er the expiration of their term, refuse to restore the possession to the landlord. On this proceeding, an inquisition was found against Stith, on the 1st of February 1814 ; but he was acquitted on a traverse tried in April following. The record does not state explicitly the object of this process, whether it was to proceed for the forcible entry, or only for the detainer; the warrant is in the form directed by the second section of the law, embracing both, which are charged as having been com- > mitted on the 22d of December 1813. This, connected with the proof in the cause, and the admission of the tenancy of Stith, in his demurrer to the amended answer to the bill, leaves no doubt, that the proceeding was against him as a tenant holding over, and coming within the provisions of the 16th section of the law. This is the more apparent, when there appears no ■ evidence, that prior to the purchase from Phillips, eight days after the ■- ’'‘finding of the inquisition, Stith has done any act disavowing his p¡:, tenancy, except the refusal to surrender possession. Thus considered,
 
 [1]
 
 ■ the case is an unsuccessful attempt by a landlord, to recover possession ’ from an obstinate tenant; whose refusal could not destroy the tenure by ‘ which he remained on the premises, nor impair any of the relations which the law established between them. The effect of the acquittal extended no further than to deprive the landlord of the benefits expected from this process, and turn him round to the ejectment which he afterwards brought. The judgment on the acquittal concluded nothing but the facts necessary to sustain the prosecution, and which could be legally in issue. If a case is made out, within the 16th section of the law, it declares, “the tenant shall be adjudged guilty of a forcible detainer and this was the matter to be inquired into. Title could not be set up as a defence; Stith could not avail
 
 *316
 
 himself of the purchase from Phillips ; a judgment for either party left their rights of property wholly unaffected, except as to the mere possession ; and the acquittal could only disaffirm the forcible detainer, as nothing else was in issue. It was conclusive on the landlord as to that; but in all other respects, the rights and relations of the parties remained as before the institution of the process. The tenancy was not determined ; Peyton was not ousted, and the possession did not become less the possession of the landlord, by any legal consequences resulting from the acquittal; unless the relative situation of the parties as landlord and tenant became changed by the purchase from Phillips, after the inquisition and before the traverse.
 

 In the case of
 
 Willison
 
 v.
 
 Watkins,
 
 3 Pet. 44, decided at the last term, this court considered and declared the law to be settled, that a purchase by a tenant of an adverse title, claiming under or attorning to it, or any other disclaimer of tenure, with the knowledge of the landlord, was a forfeiture of his term ; that his possession became so far adverse, that the act of limitations could begin to run in his favor, from the time of such forfeiture ; and the landlord could sustain ejectment against him, without notice to quit, at any time before the period proscribed by the statute had expired, by the mere force of the tenure, without any other evidence than the proof of the tenancy ; but that the tenant could in no case contest the ’’’right of J his landlord to possession, or defend himself by any claim or title adverse to him, during the time which the statute has to run. If the landlord suffers it to run out, without making an entry, or bringing a suit, each party may stand upon their right ; but until then, the possession of the tenant is the possession of the landlord.
 

 Tested by these principles, the purchase from Phillips, in 1814, can have no effect on the merits of this case. Though the possession of Stith became, from that time, adverse for these specified purposes, it remained fiduciary for all others. He could not assert an adversary title, without surrendering possession. The law recognises him as having no rights of property in the lands, unless such as grow out of his tenure ; his title must remain dormant, while he retains possession for a less term than prescribed by law ; it may become active, whenever he abandons the possession, or it is protected by the limitation. The same principles which would prevent a tenant from contesting his landlord’s title in a court of law, would apply with greater force in a court of equity, to which he would apply, for the quieting of a tortious possession, and a conveyance of the legal title. If the relations subsisting between them could deprive him of defence at law, a court of chancery could not afford him relief as a plaintiff, during their continuance. Before he can be heard in either, in assertion of his title, he must be out of possession, unless it has become legalized by time ; and even then, there may be cases where an equitable title had been purchased, under such circumstances as would justify a court of equity in withholding their aid to a
 
 maid fide
 
 purchaser.
 

 It is not necessary to decide, whether this is such an one, since we are very clear, that the present complainant can, on no principle of law or equity, have any claims on the interference of this court, to prevent the respondents from obtaining, by their judgment in ejectment, a restoration of the demised premises. This is his right, by the terms and effect of the tenui'e ; on the faith of which the one party gave, and the other received
 
 *317
 
 possession. As the possession of the plaintiff has been continuous, from the first entry, as a tenant, his remaining, after the purchase from Phillips, is neither an ouster *nor disseisin of Peyton, so as to put him to the assertion of his right under his patent. The possession of Stith must 1 be interrupted, and its continuity broken, before he can be permitted to sustain any proceeding, founded on the equitable title thus acquired. For, admitting his possession to be so far adverse, that the limitation began to run from February, 1814, the right of the plaintiffs in the ejectment to possession, on the termination of the tenancy, remains unimpaired, and is as much to be respected in a court of equity as of law ; it being an attribute and incident of the tenancy which attaches to it, notwithstanding any act of the tenant, short of a voluntary restoration of the premises, or undisturbed occupation for seven years, by the law of 1809.
 

 This view of the case is fatal to the proceeding in equity, commenced while the complainant is residing on the land demised, and before the expiration of three years from the commencement of his disclaimer, or adversary holding with the knowledge of Peyton.
 

 There is another objection to the relief sought for by the complainant, which seems to the court to be conclusive. On an attentive examination of the evidence returned with the record, we are of opinion, that a continued and uninterrupted possession for twenty years in Peyton and his heirs, prior to the filing of the bill, has been fully proved. There appears to have been no point of time, since the first entry of Wilson, in 1792 or 1793, within which the premises have been unoccupied by him ; as Peyton held the legal title, the possession under him extends to the bounds of his survey ; and is as complete to the whole, as if the actual occupation was co-extensive with his grant.
 

 It is proved, without contradiction, that the land was in the woods, wholly unimproved, when Wilson first entered ; and there is no evidence to show that, when he leased from Peyton, in March 1795, any other person was upon the ground. His patent gave him legal seisin, and constructive possession, of all the land within his survey.
 
 Barr
 
 v.
 
 Gratz,
 
 4 Wheat. 222 ;
 
 Green
 
 v.
 
 Liter,
 
 8 Cranch 250. Though Wilson’s first entry was without claim of title in himself or any other, his attornment to the title of Peyton, in 1795, will make his possession relate back to his first entry ; *and connected with the legal possession, give to Peyton all the benefits of L actual occupation, from that time. But even confining him to the period of actual occupation under his title ; it appears, that twenty-one years and eight months had elapsed, before the filing of the complainant’s bill. This would afford at law a complete bar to an ejectment under the title of Phillips ; and courts of equity adopt the same rule by analogy.
 
 Hughes
 
 v.
 
 Edwards,
 
 9 Wheat. 489 ;
 
 Elmendorf
 
 v.
 
 Taylor,
 
 10 Ibid. 152.
 

 The continuity of the possession does not apppear to have been broken ; there is evidence of an attempt made by Phillips, and Riley, his son-in-law, to tamper and collude with the tenants to attorn him ; and some of the witnesses speak of declarations of some of the tenants, of their having some sort, of conriection with his title ; but in what way does not satisfactorily appear. There is no evidence of any agreement between him and any of them ; on the contrary, there is clear evidence of the tenancy of all the occupants under Peyton, from the entry of Wilson down to the lease to Stith ; and
 
 *318
 
 no fact is disclosed, in any of the depositions, which would in law amount to a disclaimer of the tenure, by any of the tenants, an attornment to Phillips, or possession adverse to the landlord. There seems nothing which would make out such an adverse possession in Phillips, as would interrupt that of Peyton ; and though there are some circumstances in evidence, of an equivocal character, they cannot amount to a disseisin or ouster, nor dissolve the relations resulting from the original acknowledged relations between him and his tenants, which continued until the filing of the bill. Such continued possession for twenty years, under the legal title of Peyton, constitutes a complete bar to all the relief prayed for in the bill.
 

 It is, therefore, the opinion of the court, that the decree of the circuit court be reversed, and that the cause be remanded, with instructions to dismiss the bill of the complainants, with costs, but without prejudice to the right of the complainant, accruing or vested in him by any deed or contract with Luckett, or any other person, in relation to any part of the land contained in either of the surveys of Peyton.
 

 Decree reversed.