Judge Collett
delivered the opinion of the court:
The complainant alleges that the premises he claims are within 'Crawford’s entry, and not within the entry of Waters, and that if they are included within Waters’survey, and not within Crawford’s, it is owing to mistake or fraud on the part of Waters, and •■that this mistake or fraud on the part of Waters, caused Crawford *210 by mistake not to include them in his survey, he being ignorant of the error in Waters’ survey. He also alleges that Waters’ survey, so far as it includes lands without his entry, is void, and on these grounds he claims relief.
A warrant which can be located in the Yirginia military district authorizes the owner thereof to locate the quantity of land, it calls for, on any unlocated land in the district. In doing this, he is required to make his location or entry “ so specially and precisely as that others may be enabled with certainty to locate other warrants on the adjacent residuum.” Swan’s Land Laws, 127. When an entry is so made, it withdraws the land described from the mass of vacant land, and appropriates it to the satisfaction of the warrant, or so much of the warrant as is called for by the entry, but it withdraws no more nor any other land.
The entry is the only notice of the location until it is surveyed. After an entry is made, others examine it, ascertain what land is called for, and locate in the neighborhood of and adjoining it. That the previous entry should afterward be surveyed on other lands, so as to interfere with these subsequent locators, would be the grossest injustice. Crawford’s *entry was made before that of Waters’ was surveyed, and calls for Waters’ entry, making the line which bounds Waters’ entry on the north the base line and south boundary of Crawford’s entry; Waters’ entry requires the creek to be kept in the middle of the survey, that is, that equal quantities of his land should lie on each side of the-creek, or on each side of the line to be drawn on the general course of the creek as it passes through his survey. 1 Marsh. 130; 5 Peters, 488. If the survey was so made, it does not interfere with Crawford’s entry-or survey. If it was surveyed as-the defendants contend, it includes nearly all the complainants’ land, and more than two-thirds of the land included in Waters’ survey is on the north side of the creek, and at least one-third of it north of his entry, and on land included in Crawford’s entry. Crawford’s entry was made in August, 1787, only a few days after that of Waters. Waters surveyed his entry in 1788.-Crawford surveyed in 1796. Had Crawford disregarded Waters’ survey, and run the line bounding Waters on the north, where it-should have been run, according to Waters’ entry, and made that line the southern boundary and base line of his survey, this-'would have been, as it regarded Waters, according to the entriea *211 ■of both — then the survey of Waters could not have affected Crawford’s title. But Crawford did not do so; he regarded the survey ■of Waters as being according to his entry, and made his own ¡survey to adjoin Waters’ survey. In 1S00 Crawford’s assignee obtained a patent for the land as surveyed by Crawford.
The survey is the party’s construction of this entry; it is supposed to be directed by him. In fact, in making these locations the surveyor was almost always the hired agent of the owner of the warrant, employed to make both the entry and the survey. It was held, in Kentucky, that a survey recorded satisfied the warrant, or that the warrant was merged in the survey, and that no alteration could afterward be made. The warrant, the authority to the party, was satisfied, and could not be again set up. Hard. 567; 1 Marsh. 130. The Supreme Court of the United States have decided that, after a survey in this district has been recorded, the •entry and survey may be withdrawn, 7 Wheat. 23; and that after they are withdrawn the warrant may be relocated. 4 Pet. 342. After a patent issues the power of the party over his *warrant or location is gone. The entry and location have been made under his direction; he has returned to the government his survey and warrant, and asked for and received a grant vesting in him the fee of the land granted, whether it was within his entry or not; whether his. entry was good or not. The land patented ■can not afterward be re-entered, no matter how irregularly it may have been entered or surveyed. It is no longer vacant or unappropriated, but is vested in the patentee. 7 Wheat. 212; 5 Pet. ■Cond. 272. All the equity is merged in the grant. 2 Pet. Cond. 528; 7 Cranch, 354. When a patent issues the government retains the warrant, and in case the patentee or his alienee is evicted, the patentee can, on application, obtain his warrant for relocation. Act of Congress, passed May 13, 1800; Swan’s Land Laws, 133. If a person could enter land in one place, survey in another, by patent obtained from the government the land surveyed, and then set up his claim to the land described by his entry, he would defraud the government. If the land that he had entered, but had excluded from his survey and patent, had been located by another, he would defraud him. There is no evidence ■of fraud in this case. The mistake, if there is one, we can not relieve against. To relieve would shake more than half the titles •between the Scioto and Little Miami rivers. Almost every survey *212 'includes more land than the entry calls for, and so far is a departure from the entry by covering ground not included within it. Most of the entries were made as in this case, calling one for another; Stephenson’s entry calls for the upper line of Dandridge; Waters’ calls for the upper line of Stephenson; Crawford’s for that which is the north line of Waters’. These entries were all made before any of them were surveyed. Obannon, who probably made all the entries, surveyed them all. The return of the ■county surveyor shows that Dandridge’s upper line is twenty poles too far up the creek. It is four hundred and twenty poles from the base, whereas it should have been but four hundred. This twenty poles is on Stephenson’s entry. Obannon, in surveying for Stephenson, took this line, as run by him for Dandridge, as the lower line of Stephenson. This threw Stephenson twenty poles on Waters’ entry. As Stephenson has a larger entry than Dandridge, and probably a proportionate surplus, it is then probable that his survey encroached at least forty poles upon Waters’ entry. This caused Crawford, by having to begin at a corner of ^Waters’, to be thrown a considerable distance farther from the Ohio than he would have been had there been no mistake made by Obannon in making this chain of surveys. Before he made his survey Crawford had it in his power to have corrected all these mistakes, so far as they affected his entry. He might have brought himself nearer the Ohio, as well as nearer Cross creek. If he can now go out of his patent south, on to Waters’ survey, because his entry was there, he can also go east toward the Ohio on to Stephenson’s survey for the same reason. And thiis a very great proportion of the landholders within the Virginia military district might be disturbed and injured if mistakes such as Obannon here committed could be corrected.
The complainant contends that in fact he has the legal title to the premises, and having the possession, that the defendants should, on this ground, be decreed to release to him, and the injunction be made perpetual. The patent of Grimes on Crawfordjs survey was granted in 1800; that of Dawson on Waters’ survey, in 1823; so that if the premises in controversy are within Crawford’s survey, the complainant has the legal title.
The complainant long ago settled in the woods upon the premises, and has ever since improved them, claiming under Grimes’ patent. Whether the line by which the complainant claims, or the *213 line by which the defendants claim, is the original line between, the surveys of Crawford and Waters, has been a subject of much litigation between persons owning parts of Crawford’s and parts; of Waters’ surveys, and of the adjoining dependent surveys, and the verdicts have been some in favor of one line and some in favor of the other.
Section 14 of the act regulating the chancery practice, 29 Rev. Stat. 33, authorizes the filing of a bill by him who is in possession ofj and has the legal title to, a tract of land, against him who claims-title to it, to quiet the title of the possessor, if he should show ta the satisfaction of the court that the legal title is in him. For tho-purpose of ascertaining, as satisfactorily as this case will admit, where the true line between these surveys is, the court will order a retrial of the ejectment in the Supreme Court, as an original issua ordered by this court.