Collins v. Doe, ex dem. Robinson.

---

## COLLINS *vs.* DOE, EX DEM. ROBINSON.

[EJECTMENT FOR CITY LOT.]

1. *When mortgagee may maintain ejectment.*—Authorities cited by the court on the question, whether a mortgagee may maintain ejectment after payment of the mortgage debt.
2. *When vendor may maintain ejectment against purchaser.*—A purchaser of land, holding only his vendor's bond for title, cannot defeat an ejectment by the latter, although the sale was made under a mortgage and the entire purchase-money has been paid; nor does a sub-purchaser from him occupy any better position.
3. *Relevancy of evidence affecting title of purchaser.*—In ejectment by the vendor, against one claiming under the purchaser, if it appears that no conveyance was executed to the purchaser, the fact that he paid the purchase-money is immaterial and irrelevant, since such payment could not confer on him any legal title.
4. *What title may be sold under execution at law.*—A purchaser of land, holding only his vendor's bond for titles, has not such a title as is subject to levy and sale under execution at law.
5. *Validity of sale for taxes.*—The appellate court cannot affirm the validity of a sale and conveyance of land by a city tax-collector, when the record only sets out his deed to the purchaser.

Collins v. Doe, ex dem. Robinson.

6. *Limitation of real action.*—There is no statute of limitations of force in this State, applicable to an action of ejectment commenced within one year after the adoption of the Code, (January 17, 1853,) unless a bar was perfected under the statute which existed before the passage of the act of 1843.

APPEAL from the Circuit Court of Montgomery. Tried before the Hon. S. D. HALE.

THIS action was brought by Cornelius Robinson, against Robert C. Collins, to recover several city lots in Montgomery, and was commenced on the 9th January, 1854. The defendant entered a disclaimer as to all the lots mentioned in the declaration, "except the south one-third of lot No. 2 and the north one-third of lot No. 3," as to which he confessed lease, entry and ouster; and the cause was tried, on issue joined, at the spring term of said circuit court, 1857.

On the trial, as appears from the bill of exceptions, the plaintiff proved, by B. S. Bibb, "that he (plaintiff) was in possession of the premises sued for, about twenty years ago, for two or three years, and used them as a livery-stable; that when he went out of possession, (witness could not fix the exact time,) one John W. T. Reid went into possession; that when Reid went out of possession, (the precise time witness could not state,) the premises were constantly used as a livery-stable by various other persons, whose names he could not recollect, nor could he state the times when they entered and left the premises, nor under whom they entered and claimed, but he was satisfied no one of them held possession so long as ten years." The plaintiff having here closed his case, the defendant offered in evidence a deed for the premises, executed by the plaintiff to Smith & Eddins, dated the 13th April, 1835; and, being informed by the court that he might afterwards adduce evidence in reply to any new matter brought forward by the plaintiff, closed his defense. The plaintiff then offered in evidence a certified copy of a mortgage executed by Smith & Eddins to himself, of even date with his deed to them, conveying the premises to him to secure the payment of the purchase-money; which instrument is not embodied in the transcript. The

defendant then read in evidence a penal bond, executed by the plaintiff to said John W. T. Reid, dated the 8th November, 1837 ; which recited that the former had that day sold to the latter, "at public auction, at the court-house door in the city of Montgomery," said lots Nos. 2 and 3 ; and was conditioned that he should make to the latter, "at any time when demanded," "a good deed of conveyance for said lots by virtue of an authority from Smith & Eddins for that purpose, with a good warranty of title" in his own name. The defendant "then offered to prove, by parol, the fact that the plaintiff, at the time of the date of said bond, had sold the premises in dispute to said Reid." The court excluded this evidence, on the plaintiff's objection, and the defendant excepted.

The defendant then proved that, in June, 1842, said two lots were sold by the sheriff of Montgomery county, under several executions in his hands against said Reid ; "and offered to read the sheriff's deed to the purchaser at said sale, one Edward Leonard, for the purpose of show-ing that said Leonard claimed title to the property." The court excluded this evidence, on the plaintiff's objec-tion, and the defendant excepted. "It was further proved by the defendant, that the premises in dispute had always been enclosed, and used as a mule-lot by drovers. There was no evidence that Leonard had any notice of Robin-son's claim to the premises, except such as might arise from the registration of the deed and mortgage." The defendant offered in evidence, also, a deed from John B. Garrett, the city marshal of Montgomery, dated the 19th March, 1841, which recited a sale of said lots by him for taxes due the city, and conveyed them to said Leonard as the purchaser at the sale ; and which was offered in evi-dence "for the purpose of showing that said Leonard was claiming title to the premises in dispute." The defendant further proved, "that at the date of plaintiff's said bond to Reid, John Leonard, with his family, including said Edward Leonard, who was his son, was residing on a part of said premises ; that Richard Owen afterwards went into possession of said lots, claiming title under Edward Leonard, from whom he received the possession ; that

Owen afterwards sold that portion of said lots here in dispute to Wade Allen, who, by deed dated the 12th June, 1847, conveyed the same to the defendant in this suit; and that Owen still retained possession of the residue of said lots."

The defendant further proved, that said Reid, by deed dated the 19th November, 1840, sold and conveyed said lots to one George Baber, who went into possession at the date of his deed, but afterwards attorned to Edward Leonard, to whom he subsequently delivered the possession of the premises. He then offered to prove, by one Shackelford, "that in January, 1841, while said Baber was in possession of said lots under his purchase from Reid, becoming uneasy about his title, and fearing that Reid had not paid Robinson the purchase-money, he (Baber) requested witness, when he went to Mobile, where Robinson then lived, to call on Robinson, and ascertain from him whether or not Reid had paid him said purchase-money; that witness accordingly called on Robinson, in January, 1841, and informed him of Baber's uneasiness, and inquired of him whether or not Reid had paid the amount of said purchase-money; and that Robinson then and there replied, that Baber need not be uneasy about the matter, that Reid had paid him the full amount of the purchase-money, and that no part of the same was now due." The court excluded this evidence, on the plaintiff's objection, and the defendant excepted.

"The court charged the jury, among other things, that if they believed all the evidence offered by the plaintiff, he was entitled to a verdict, unless the defendant had given evidence of something to prevent the recovery; that Robinson's bond to Reid did not convey to Reid any title, and, under the circumstances, could not afford protection to Reid, or those claiming under or through him, and, consequently, formed no bar to the plaintiff's recovery; but, that if the defendant, and those under whom he claimed, held ten years adverse possession of the premises before the suit was brought, it would bar the recovery, although the defendant produced no written evidence of title."

"The defendant excepted to this charge, and then requested the court to instruct the jury, that if Edward Leonard had possession of the premises, under a *bona-fide* claim of title, since 1841, under his tax-title; and that Richard Owen, before the expiration of ten years, came into possession, claiming title under said Leonard; and that these two, joining their possessions together, had possession ten years before suit brought, claiming title *bona fide;* and that Allen claimed under Owen, and Collins under Allen,—then the plaintiff could not recover, and their verdict must be for the defendant. Which charge the court refused to give, and the defendant excepted."

The errors assigned are, the rulings of the court on the evidence, the charge given, and the refusal to give the charge asked.

Thos. WILLIAMS, for the appellant.

MARTIN, BALDWIN & SAYRE, *contra.*

STONE, J.—It is contended for appellant, that the claim of appellee is only that of mortgagee, and that a recovery in ejectment cannot be had on such title, after the payment of the debt to secure which the mortgage was given. As bearing on this legal proposition, we cite the following authorities: 2 Greenlf. Ev. § 330; Burton v. Austin, 4 Ver. 105; Paxon's Lessee v. Paul, 3 Harris & McH. 399; Peltz v. Clarke, 5 Peters, 491.

We deem it unnecessary to decide the legal question stated above, for the following reasons:

1. The claim of appellee is not that of simple mortgagee. True, he conveyed the lands in controversy to Smith & Eddins, and took from them a cotemporaneous mortgage of the premises. The mortgage, however, contained a power of sale; and under that power, Mr. Robinson subsequently sold the lots to J. W. T. Reid, and gave him a bond to make title when called on. There is no evidence that any conveyance was ever made to Reid, or that title ever afterwards passed out of Robinson by any conveyance. All the subsequent claimants held

by successive transfers under Reid's ownership, thus acquired at mortgage sale. The appellant, then, does not claim title directly from the mortgagor, but from the sale subsequently made to Reid. It thus becomes unnecessary to inquire into the legal relation subsisting between Robinson and Smith & Eddins. As to these lots, that relation was determined by the sale which Robinson made as mortgagee. Collins claims under Reid's purchase, and his rights must depend on Reid's relation to Robinson, acquired by his purchase at the mortgage sale. He received but an obligation to make title; and under that obligation, he cannot defend against the paramount right of Robinson, his vendor.

2. There is no evidence that the mortgage debt from Smith & Eddins has ever been paid. It is probably true that Robinson sold the premises under the power contained in his mortgage, and that if the terms of that sale have been complied with, Reid, or whoever owns his rights under his purchase, can, in equity, compel a conveyance.—Walker's American Law, 320. Reid, however, and those claiming under him, stand in the relation of purchaser by executory contract to Robinson, the vendor to Reid.

[2.] Under the above state of case, leaving out of view for the present the statute of limitations, neither Reid, nor any one holding in his right, can defend against the title of Robinson; and at law it does not vary the case, if Reid has paid to Robinson the entire purchase-money. Chapman v. Glassell, 13 Ala. 50; Huddle v. Worthington, 1 Ohio, 195.

[3.] The propositions stated above are conclusive to show, that whether Reid had paid Robinson or not, was immaterial in this action. There was no error in rejecting evidence of payment by Reid.

Neither was there any error in rejecting oral evidence of the sale by Robinson, and purchase by Reid. That fact was proved by the bond; and no evidence of sale, short of a *conveyance of the title* by Robinson, could defeat the appellee's superior title.—Hilliard on Vendors, vol. 1, pp. 2, 3; Walker's American Law, 319, note.

Collins v. Doe, ex dem. Robinson.

[4.] Nor was there any error in rejecting evidence of the sheriff's sale under executions against Reid, and his deed to the purchaser. Reid had no title which was subject to levy and sale under execution.—Elmore v. Harris, 13 Ala. 360; Causey v. Driver, 13 Ala. 818.

[5.] There is not enough in the record to enable us to affirm the validity of the sale and conveyance by the city tax-collector.—Blackwell on Tax Titles, 430.

[6.] This leaves but the question arising on the statutes of limitation; and we feel constrained to declare, that there was no statute of limitations applicable to this case, of force when the action was brought, 9th January, 1854. The act of 1843, (Pamph. Acts, 17; Clay's Digest, p. 329, § 93,) is the only statute relied on by appellant.

Section 10 of the Code repealed "all acts of a public nature, designed to operate on all the people of the State," not embraced in the Code. The act of 1843 was an act of a public nature, and is not embraced in the Code. The only section of the Code which, in its provisions, resembles the act of 1843, is section 2476, subdivision 2. That section, construed in connection with article 2 of that chapter, pp. 457–8–9 of the Code, is essentially different from the provisions of the act of 1843; and hence we hold, that the former statute ceased to have any operation, when the Code went into effect, January 17, 1853.

Nor do the limitations provided by the Code apply to this case. This action was brought within a year after the Code went into operation, and is expressly covered by the exception in section 2502 of the Code.

The act of Feb. 15th, 1854, (Pamph. Acts, 71,) was passed after this action was commenced, and cannot affect the plaintiff's right to recover.

There is no error in the record, available to the appellant; and the judgment of the circuit court is affirmed.