OPINION of the Court, by
Judge Wallace.
This is a contest for land, in which Watson was the complainant in the court below. He relies on the following entry, dated December 19th, 1782: “ Josiah Watson enters 4450 acres, &c. lying on the north fork of Mill creek, a southwest branch of Hinkston’s fork of Licking ; beginning at a sugartree and small white oak, marked S M, standing in the fork of a branch near the head of said creek, and running north 800 poles, thence north 60 east 1000 poles, thence south 30 east for quantity.” Hinkston’s fork, beiñg a large watercourse, may be presumed, and seems to be admitted, to have been known by that name when this entry was made ; and Mill creek, a southwest branch ofHinkston, is proven to have been known by that name to the generality of those who were conversant in that part of the country ; and it appears, from testimony and the connected plat, that Mill creek is composed of two prongs or forks, but it is not proven that they were generally known by appropriate names at so early a period. This, however, ought not to be fatal to the entry, it one of those prongs obviously bears or points more to the north or to the northward than the other, which, from the last mentioned exhibit, is shewn to be the case ; and that Watson’s survey has been made on that prong. Therefore, these calls must be sustained as good general description.
A lickih«wn, correiponding nearly as to difiances and courfe, and no other lick in vicinity being proved, that íhall be the lick alluded to in the entry.
To be furvey-ed in a fquare to the cardinal points, lick in the middle.
Entry abeut acó poles above M’Fall’s claim, running up on each fide of the creek for quantity.
About rejected anu preciie distance taken.
Same principle, Wbuakcr vs. Hail, ante 72 — South vs. 2?074i/«,Pr.Dec. 32 —Nichols vs. Wells, Pr* Dec. 3°7.
To be furvey-ed in a fquare, lines governed by general courfe of creek, &c, the 200 poles to be mea. fured on a direct line, &c.
Entry to join M’Fall’s preemption and Sublett’s entry, running along their northweft line, and running northweft for quantity, to be Purveyed in a fquare, as xux as the call to adjoin their lines will permit.
*106 We shall now proceed to consider the special locativé calls. “ Beginning at a sugartree and small whiteoak$ marked S M, standing in the fork of a branch, near the head of said creek, &c.” Two forks are shewn, within a mile or two of the head of this most northwardly prong of Mill creek, to which other locators would naturally be led to seek for those marked trees, and they would have found them in the fork most remote from the head, but in the one at which they would have first arrived. It has been urged, that the expression, a fork of a branch, near the head of said creek, may not mean that this fork is a part of Mill creek, nor it may not mean the head of the north fork of Mill creek ; and, indeed, the expression is not so definite as it might have been ; and if the facts had been otherwise, the entry would have been thereby defeated. But it is conceived that the expression, taken in connexion with the rest of the entry, induced the presumption, that the fork of a branch of the north fork of Mill creek was intended ; and that other locators should have pursued this north fork to the head without success, before they would have had just cause of objection ; more especially, as the whole of shis fork is but a short watercourse: but in doing so they would have found the marked trees. A more serious difficulty here presents itself. There is no proof that the marks existed before the entry was made, or until near a month afterwards, when Watson’s agent came with the surveyor to shew the beginning of his entry. And if the marks were not made before the entry, the claim cannot be supported. But the presumption in its favor is strong, and ought to be indulged ; because, had the locator intended fraudulently to have made the marks after he made the entry, it is highly improbable, that he would in so short a time have brought the surveyor to lay off the land, and still more improbable, that he would have so particularly called for two trees, a sugartree and a small whiteoak, in the fork of a branch, when it was very uncertain whether such could be found so situated as to fit the remaining parts of this call. The beginning having been satisfactorily established, the courses and distances therefrom ar-e specially given, and the survey appearing to have beep cor \ rectly made, Watson’s claim must be sustained ; except so far as the adversary entry, which is of prior date, *107 shall also be found to be valid. This entry, and those on which it depends, are as follows : “ December 18th, 1782 — John Mosby enters 1000 acres of land, &c. about seven miles from Riddle’s Station, joining John M’Fall’s pre-emption and Lewis Soublett’s entry, running along their northwest line, and running northwest for quantity.” “ April 27, 1780 — John M’Fall enters a pre-emption of 892 acres, by virtue of a warrant for the same, on Mill creek, the waters of Licking, about six miles from Ruddle’s Station, a west course, to include a deer lick, about two or three miles below the fork of the creek.” “ May 10th, 1780 — (Lewis Squb-lett enters 405 acres, upon a treasury warrant, on the waters of the south fork of Licking, on the south side, on Mill creek, about two hundred poles above M’Fall’s claim, running up on each side of the creek for quantity.” As to the objects called for in these entries, it is only necessary to premise, in addition to >vhat is contained in the preceding parts of this opinion relative to some of those objects, that Ruddle’s Station must be presumed to have been sufficiently notorious, and, by implication, is also, proven to have.been so ; that, from the surveyor’s report, its situation is ascertained, and shews the course and the distances therefrom, which are called for in these entries, to be reasonably accurate : and it is proven, that M’Fall’s Lick, thereon exhibited, was well known by that name. Moreover, its conceived, that the call in M’Fall’s entry for a deer lick, taken with its other calls, must intend M’Fall’s Lick, it being situated nearly at the distance specified below the fork of Mill creek, and no other lick in the vicinity is proven to have existed. To which might be subjoined, that it is believed that Hinkston’s fork of Licking, was, in the year 1780, well known by the name of the south fork of Licking. Then, conformably to numerous decisions of this court, M’Fall’s pre-emption ought so to be surveyed as to include the lick in the centre of a square, with the lines to the cardinal points. And Soublett’s entry should also be surveyed in a. square, having equal quantities thereof on each side of, and parallel to, the general course of so much of Mill creek as shall be included therein, [Same principle, Davis’s heirs vs. Lockhart’s heirs, Har. 368—Whitaker vs. Hall, unte 72.] and having the lower line 200 poles on a di *108 rect course up the creek from where M’Fall’s tipper line ought to cross the same. And then Mosby’s en, try ought to have been surveyed to adjoin the most north-westwardly line of M’Fall’s and Soublett’s surveys, when made agreeably to this decision, and as near a square as the call to adjoin their lines will permit. As Mosby’s entry is elder than Watson’s, it need only be suggested, that he and his assignees ought to continue to hold all the land included in the survey thus to be made, which will also be included in his former survey, and that the remainder only of the last mentioned survey ought to have been decreed to Watson; which is variant from the decree in question. Before we conclude, it is necessary to observe, that in the argument of this cause, objections were made to two of the depositions, which were taken to identify the calls of Watson’s entry, the beginning of his survey, &c. It is alleged, that Matthew Patterson’s first deposition shews that he was so interested as to render him an imcompetent witness. He was asked by the defendants, “ Are you interested in this beginning corner ?” He answered, “ I am entitled to the one half of 772 acres, but I set no value on it, and therefore I think myself not interested.” “ I have also sold my chance of another claim of about 1600 acres, depending on this survey.” Patterson does not express that he was interested in the event of this suit, or in the land claimed by Watson; but, from the question he was asked, and from the latter part of his answer, it is rather implied, that he was only interested in 772 acres of land, depending on Watson’s beginning corner or survey. And so it must be understood from his answer to the same question, contained in his second deposition, to wit: “I do not think myself interested, either directly or indirectly, in the establishment of Watson’s entry,” Sec. So that it does not appear that Patterson was under the influence of any bias, which ought even to lessen his credibility. And to John Napper’s deposition H is objected, that it is proven that when, in the year 1803, he was called on as a witness for Watson, he declared, not being on oath, that he could not recollect any thing of the said corner, nor of the north fork of Mili creek ; but it appears, that when he was again brought forward, near two years afterwards, he deposed, that he had been acquainted with this fork ever since *109 the year 1780, and had known it ever since by the name of the north fork of Mill creek, and that this was the name hy which he had generally heard it called ; that that this place is the beginning corner of Josiah Watson’s survey ; and that he recollected seeing the sugar-tree then standing at this place when the survey was made, and found it marked as it is now. These palpa, ble inconsistencies between his assertions when on oath, and not on oath, certainly render the credibility of his testimony very doubtful. But his testimony is confirmed by that of Stucker and Patterson, and not being contradicted by any other testimony, it cannot be entirely disregarded.
Witnefs having a claim de-pendantonfame beginning, but not involved in this {hit, competent.
Contradictory ftatements by a witnefs when on oath and not on oath, render his credibility doubtful ; but fupported by other evidenee5 and not contradicted by any other, he cannot be disregarded.
*109 Wherefore, it is decreed and ordered, that the said decree of the circuit court for the county of Harrison be reversed, and that the appellee do pay unto the appellants, their costs in this court incurred. And it is further decreed and ordered, that the suit be remanded to the said circuit court, that it may cause Mosby’s entry, on which the defendants in that court found their claims, to be laid off conformably to the foregoing opinion, and their respective interferences with the survey of the complainant to be ascertained, and enter up a decree in his favor accordingly: and moreover, to decree and order whatever else the justice of the case liiay require.