Chief Justice Robertson
delivered the Opinion of the Court—
Judge Nicholas not entirely concurring in the Opinion, and dis-seating as to the mandate. - ,
George Cardwell having sold and conveyed, it 1804, to George Strother, a tract of land in Gallatin county, and Strother having afterwards obtained a judgment against Cardwell’s administrators for damages, in consequence of an eviction from the land, by a judgment in favor of John Howard, rendered since 1816, on an adversary title, the case was brought to this court and affirmed. Litt. Sel. Ca. 429.
Cardwell’s administrators then enjoined the' judgment, and prayed for a perpetuation of tile injunction on two grounds: first, an alleged fraudulent combination between Strother and Howard, in the action of ejectment, which had terminated in the judgment of eviction ; second, the asserted superiority of the entry tinder which Cardwell claimed.
An entry — ‘ beginning at the ripper corner, next the river, of J P’s entry of 8400 acres, and to run par••allel with the river, then off at right angles, eastwardiy, for quantity” — the previous entry referred to, being — ‘ J P enters tyc. about two miles up the first branch above the 18 mile creek, be ginning ata tree marked J S' to run north #■<:.’ — is sufficiently definite, and good on its face. 'Pile notoriety of the stream at the date of the entry, being established, andthe proof justifying the conclusion that the tree was marked before the entry was made, is held to be valid.
*440 Witliout permitting Howard to answer the hill, the circuit court decreed a perpetuation of the injunction. This court reversed that decree, for want of parties, and remanded the case, for preparation, for a hearing on the entries, and as to the imputed fraud also, unless it had been tried in the action at law. See 2 J. J. Mar. 354.
On the return of the case to the circuit court, Card-well’s heirs were made parties, for the purpose of obtaining a decree on the equitable right to the land ; and Howard, according to the mandate from this court, was permitted to file an answer ; in which he denied the alleged fraud, and required proof of the validity of the entry under which Cardwell claimed the land.
On the final hearing of the cause, thus prepared, the circuit court dissolved the injunction, witli damages, and dismissed the bill with costs; and this appeal is prosecuted to reverse that decree.
We need not enquire whether the alleged collusion between Strother and Cardwell was investigated in the action of covenant, because we are of the opinion that the proof is insufficient to establish fraud.
But the question raised on the entry, is one of more difficulty.
No entry has been established by Howard. That relied on by the appellants, is an entry in the name of John Roberts, from whom Cardwell had derived title and Which is as follows
“ 1782, December 26th.
John Roberts enters ten thousand acres upon a treasury warrant No. &c. beginning at the upper corner, next the river, of James Patton’s entry of eight thousand four hundred acres, and to run parallel with the river six miles, then off, at right angles, eastwardiy, for quantity.”
Patton’s entry, which was surveyed September 20th, 1783, is as follows :—
“ 1782, December 26th.
James Patton enters eight thousand four hundred acres, on a treasury warrant, No. 1231, about two miles up the first branch above the eighteen mile creek, beginning at a tree marked J. P; and to run north, five *441 miles, then to extend off at right angles eastwardly, for quantity.”
A tree — the beginning corner —being described in an entry as marked with certainletti rs— the omission of further description, as the species, size or exact position, is not fatal. If the description will enable a subsequent locator to find the object, by proper enqvirySrseoreh, it is sufficient. Such n description of objects in an entry, as will enable a subsequent locator to go to the place and find them, by the mere directions of the entry .without any further assistanceorenquirv, is not required-.
The notoriety of “ eighteen mile creek,” at and prior to the date of Patton’s entry, has been indisputably established ; and the stream on which Patton’s survey was made, and which 1ms been called “ Patton’s creek” ever since the date of the entry, is the only one that could, with any propriety, have been denominated the first tl branch above the eighteen mile creek and it appears, that the beginning coi ner of Patton’s survey was a mulberry tree, two miles and about fifty poles, on a straight line, from the Ohio river, on the northern bank of “Patton’s creek,” near the margin of the stream, and exhibiting, in large and legible capitals, the initials, J. P.
On its /ace, the entry is, in onr judgment, sufficiently definite in its calls, descriptive and locative, for any reasonable purpose of notice of its identity to a subsequent locator of prudence and vigilance.
“Though the tree, designated as the,beginning, is not described by its kind or size or exact position, yet, we cannot seriously doubt, that a subsequent locator, after reading the entrv, would infer, without hesitation or perplexity, that it was on the branch, about two miles from its mouth, and that it could therefore be found by ascending the branch a reasonable distance beyond two miles; and consequently, an honest and prudent locator, about to make a subsequent appropriation upon or near Patton’s creek, would have searched for the tree marked J. P. and, had be done so in good faith-, we are not allowed to doubt, that be would have found it without any difficulty, if it was, in -fact, marked at the date of the entry, as (’escribed. Not only do the notoriety of “eighteen mile creek,” and the character of the other calls authorize the presumption, that the beginning, if marked as described, could have been found, after proper enquiry and reasonable search, hut the extraneous testimony proves clearly, that it could have been, and had been, thus found, shortly after the date of the entry. And that is as much of precision as this court has required in any entry.
*442 In the case of Whitaker et al. vs. Hall, 1 Bibb, 74, this court said : “ It would be very unreasonable to expect and require, that a locator should so describe the objects called for, as that another, taking his words upon paper, could,' by the help of them alone, without enquiry in pais, and as a solitary wanderer, find out anil know, as soon as found, the objects intended.” And, in the same case? page 75, the cour.t said, that “ no decision in this country has ever asserted, that an entry must necessarily contain such a reference to objects of notoriety and identity, as that a person could go from the office, with a copy of the entry, and, by that, find its position, unaided by any information from his fellows in society.”
And hence, in the case of Green et al. vs. Watson, 1 Bibb, 105, this court established the validity of the following entry : Josiah Watson enters four thousand four hundred and fifty acres &c. lying on the north fork of Mill creek, a south-west branch of Hinkston’s fork of Licking; beginning at a sugar tree and small white oak, marked S. \M. standing in the fork of a branch near the head of said creek, and running north, &c. &e. The locative call in that case was scarcely as specific, or as easily susceptible of identification, as that contained in Patton’s entry. Marked trees in the fork of a branch, near the head of said creek.” Should, prima facie, be presumed to be as difficult to find, and even more difficult to identify, than a marked tree on a designated creek, “about two miles” from its mouth ; and more especially, when it is understood, as stated in ,the case just cited, that there were two “prongs or forks” to “Mill creek,” neither of which was known, at the date of the entry, by any appropriate” name. But, nevertheless, the entry was sustained in that case, because' the court believed, from the proofs, that the beginning could have been found and identified, by a vigilant and enquiring locator.
Equally and even more strong, in some respects, are the proofs in this case. The only circumstances, that could operate to the comparative disadvantage of Patton’s entry, are : first, that the kind of tree is not stated; second, that its relative position to the branch or creek *443 is not,' in so many words, expressly described. But, as before suggested, the entry clearly imports, that the tree was on the branch or near it; and whether the tree was a mulberry or a white oak, could not have been very material, because it was the letters upon it, and its relative position as described, which must have identified it, as the tree called for in the entry. But, in some other respects, Patton’s entry is,more descriptive,.than that of Watson, which was sustained by this court. “The fork of a branch near the head of said creek,” as called for in Watson’s entry, is somewhat indefinite, and might be vexatious and delusive to a subsequent locator. ■ No definite clue is given for ascertaining what branch was intended, or how “mear” the beginning was to, the “Acad” of the creek. But Patton’s entry, with some degree of satisfactory approximation to certainty, gave the distance from the mouth of the “ArancA” to the tree marked J. P. and clearly imported, that the tree was on the bank of the branch, or so near to it as to be visible-from it.
An entry made at a time when, as we may presume,, there was no survey or other entry which it could have called for or adjoined, could not be expected to have been much more certain or . specific than the calls of Patton’s entry should be deemed to have been. There is nothing in the record from which we would be authorized to infer, that the entry could have been made to afford better criteria for identifying the place of beginning, except in the description of the tree called‘for as the beginning. But, as before suggested, the entry could not have been reasonably understood as meaning, that the tree was any where else than on the branch, about two miles from its month. The tree was, in fact, there. And the proof satisfactorily shews, that, with those guides, a subsequent locator might have found and identified the tree, without difficulty, as early as the spring, of the year succeeding the date of the entry.,
We are, therefore, disposed to think, that, tested by reason, analogy, and authority, the entry should be deemed valid — if, as the appellants have tried to prove, the tree, described as the beginning, was marked with *444 J. P. either before or at the time of the entry. As t® this point there is no positive proof; and the circumstances, which have been established, are not such as will leave no room for doubt, or for difference of opinion.
If a deposition is contradictory of any other previous deposition of the same witness,,it destroys his credibility : but if the former deposition will admit of a construction notineonsistent with the latter, and the witness i» supported by the testimony of others, his deposition will have its influence.
Proof that a locator went out, in the fall, to explore land,20 miles or more iffpin hie residence, and upon his return stated, -that he had made a location upon land, which he immediately entered in the surveyor’s office, with proof, that his initials, apparently cut months before, were seen the next spring, upon a tree at that place, authorizes the presump tion that the tree was thus marked before he made the entry.
*444 Sanders, in his deposition, swears that Patton, started, in the fall of 1782, to explore the land up the branch since called Patton’s creek ; arid, after Ins return from his tour of exploration, said that he had made such an entry as he did make; and also, that he (Sanders) went with Patton and others, to the place of beginning, in the spring of 1783, and saw the mulberrj tree on the north side of the branch, with J. P. then marked upon it ; and which - letters exhibited the appearance of having been made some months prior to that time. McCarty swears to the same facts in substance; and also, swears, that he had seen the tree with the letters J. P. upon it, “ in 1782.”
It is true that McCarty, in a former deposition, in a suit between other parties, swore, that, prior to the survey, he had not seen any trees marked j. P. But, in a previous part of that deposition, he had virtually sworn, that the mulberry was- marked prioi to the survey, but that other trees were also marked J. P. at the time of the survey ; and therefore, when, on cross examination, he said that the trees were marked at the time of the survey, and that he had seen J. P. on none of them before that time, he may have referred to the “ other trees'1'' that he had just described as having been marked when the survey was made ; and it is not very improbable that such was his meaning — more especially, as Sanders, as well as himself, swore that the mulberry exhibited the letters J. P. in the spring before the making of the survey. But, however this may be, his character seems otherwise to be good and unimpeached, and what he swears in this case, is fortified by Sanders,-whose veracity has not been questioned.
Now, waiving what McCarty has sworn, as to his having seen the letters on the tree in 1782, we are still of the opinion, that the presumption, from the other facts which are established by sufficient proof, is, that *445 the tree was marked before the making of the entry in the office. It is not probable that, after the date of his entry, Patton would have gone from the falls of the Ohio," upwards of twenty miles, in the winter time, to mark the tree. It is reasonable to infer that, when he explored the country in 1782, and determined to make his entry there, calling for a tree marked J. P.' ire cut those letters on the tree. And, from the testimony of Sanders and McCarty, fortified by that of Meriwether, the deduction is rational and strong, that the letters were made on the tree, as early as December, 1782. The fact, that the tree was not designated more specially, might tend to create some suspicion, that Patton had not been on the ground, when the entry was made in the surveyor’s office. But that circumstance is, we think, repelled by the fact, that he went up the river in December, 1782, to explore the country, for the purpose of making an entry, and did make his entry immediately after his return. Then, the fact that the letters on the mulberry', were seen in the spring of 1783, apparently old enough to correspond with the call in the entry, should, in our judgment, be alone deemed sufficient to authorize the presumption, that the Lee was marked prior to the date of the entry. In the case of Green et al. vs. Watson (supra,) there was no direct proof, that the trees called lor as being marked with letters, had been so marked prior to the date of Watson’s entry. But the court presumed, that the trees had been so marked; and said, “the presumption in its favor is strong, and ought to be indulged — because, had the locator intended, fraudulently to have made the maiks after he made the entry, it is highly improbable that he would, in so short a time, have brought the surveyor to lay .off the land ; and still more improbable, that he would so particularly have called for two trees, a sugar tree and small white oak &c.” Now it is evident that, without the designation of the kind of trees, the court would, in that case, have presumed, that the marks had been made prior to the date of the entry.
We conclude, therefore, that we should presume, from the facts proved, that the mulberry was marked before *446 the entry was made — and therefore the entry is deemed valid.
of16a party8'”!) .procure an or-show^haMi survey and pntent ure in conformity to the entry — there be mg no allegation of a-want of riot fintF^ie court deciding eutryVOr ridglÍT ex officio, orasoertainV<whether there was and to*wha”extent. This ct., remanding the causeihrfurther rectTGthat3'tt!e survey shall be ordered.
During the progress of the case, no survey was made in the circuit court. We cannot, therefore, decide whe- or 'how far? the original survey and the patent correspond with the entry. But there is no intimation in the answers, that the survey was not made conformably witii the entry; and we think, that, had the circuit court, deemed the entry valid, that court should, ex officio, have directed a survey to be made, so as to ascertain the actual j>osjtion of the original survey, anti whether it includes, 1 c " so far as it was made, according to entry, the land now ‘n contest. As the calls in the patent, seem prima fucic to correspond with the entry, and as there is enough in Die record of the action of ejectment, (which seems to have been read as evidence in this case without objecDon,) to induce a presumption, that the survey, as made, includes the land in contest, or some of it; and, as we should presume, that the patent corresponds with the survey, we do not deem the omission to make a survey, whilst the case was in the court below, iatal to the equi- ^ asserted by the appellants ; and are of the opinion, that, as the entry is now adjudged to be valid, a survey should yet be made on the return of this cause to the circuit court, for the purpose of ascertaining, with a more satisfactory^ certainty arid precision, whether, and to' what extent, the original surveys so far as it was conformable with the entry, includes the land in controversy. See Hancock vs. Hancock, 1 Mon. 122.
Wherefore, it is decreed by this court, that the decree of the circuit court be, and the same is hereby reversed, and the cause remanded for further proceedings and decree, pursuant to this opinion and to the former opinion of this court.
Judge Nicholas does not altogether concur in this opinion, and dissents from tiie conclusion and mandate.