# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

JESSE STALDER et al.,

Plaintiffs-Appellees/Cross-Appellees,

v.

MARGARET GATCHELL et al.,

Defendants-Appellants/Cross-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MO 0010**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2018-137

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Craig J. Wilson*, CJ Wilson Law, LLC, P.O. Box 2879, Westerville, Ohio 43081 for Plaintiffs-Appellees/Cross-Appellees and

*Atty. Melanie M. Norris,* Steptoe and Johnson, 1233 Main Street, Suite 3000, P.O. Box 751, Wheeling, West Virginia 26003, *Atty. John Kevin West, Atty. John C. Ferrell*, Steptoe

and Johnson, 41 South High Street, Suite 2200, Columbus, Ohio 43215, for Appellant Gulfport Energy Corporation and

*Atty. Timothy B. Pettorini,* Roetzel & Andress, LPA, 222 South Main Street, Suite 400, Akron, Ohio 44308, *Atty. Sara E. Fanning,* Roetzel & Andress*,* LPA*,* 41 South High Street, Huntington Center, 21st Floor, Columbus, Ohio 43215 for Cross-Appellants Richard and Mallette Parry.

Dated:  April 15, 2022.

**Robb, J.**

{¶1}    Defendant-Appellant Gulfport Energy Corporation appeals the June 1, 2020 decision of the Monroe County Common Pleas Court granting summary judgment in favor of Plaintiffs-Appellees Jesse and Lindsay Stalder.  Gulfport argues an oil and gas lease did not entitle the Stalders to a signing bonus or royalties corresponding to a one-half mineral interest underlying the Stalders' property (the Gatchell Reservation) because the Stalders did not own the Gatchell Reservation.  In support, Gulfport states the Stalders' attempt to have the Gatchell Reservation deemed abandoned under the Dormant Mineral Act was invalid because Gulfport was producing from the land as (or for) the holder.  Gulfport alternatively argues that even if the Gatchell Reservation was abandoned and vested in the Stalders in 2016, this was not the status at the time the Stalders signed the lease in 2011 and Gulfport should not be required to pay the signing bonus upon a subsequent reuniting of the minerals with the surface.  Gulfport's arguments are overruled.

{¶2}    Cross-Appellants Richard and Mallette Parry contest the portion of the summary judgment decision stating the Gatchell Reservation was abandoned and vested in the Stalders without mentioning their earlier settlement with the Stalders.  They are concerned this may be read as conflicting with the court's January 27, 2020 settlement enforcement order, memorializing the agreement to settle by splitting the Gatchell Reservation 75% to the Stalders and 25% to the Parrys.  However, there is no indication the trial court reconsidered its order enforcing settlement which was recorded.  The order enforcing settlement between the Stalders and the Parrys remained effective and the later

Case No. 20 MO 0010

summary judgment which resolved the issues between the Stalders and Gulfport is to be read consistent with the settlement order. The trial court's judgment is affirmed.

STATEMENT OF THE CASE

**{¶3}** The Gatchell Reservation represents one-half of the oil and gas underlying property containing 64.73 acres in Sunsbury Township, Monroe County. The Gatchell Reservation was created in a deed recorded on January 27, 1904, wherein Margaret J. Gatchell conveyed the property to Cyrena J. Mathess (or Mathew), while reserving for herself and her heirs and assigns one-half of the oil and gas (with the right to mine and drill for it). (Vol. 62, P. 575).

**{¶4}** The chain of title for the Gatchell Reservation shows Margaret J. Gatchell conveyed it in 1938 to Minnie E. Parry, who conveyed it in 1955 to Georgia Parry. Georgia Parry conveyed the Gatchell Reservation (and other mineral interests) to Society National Bank of Cleveland, Trustee in a quit claim deed recorded on December 12, 1965.

**{¶5}** The next deed in the chain of title was executed by "Thayer L. Parry, Sole Heir & Devisee of Georgia Parry, deceased, and Katherine L. Parry, Wife of Thayer L. Parry" on April 2, 1984 and recorded on November 20, 1984. This deed conveyed the Gatchell Reservation (and other mineral interests) to "Society National Bank, Trustee" with an address of 127 Public Square in Cleveland (the same address as the bank in the prior deed).

**{¶6}** Cross-Appellant Richard Parry then inherited the Gatchell Reservation from his father Thayer Parry, who died in 1996 and whose estate was administered in Summit County. The will named Society National Bank, Cleveland as the executor. As Katherine had predeceased Thayer, the will directed the bank or its successor to distribute a trust to his sole child, Richard Parry. The trust, as modified in 1994, also directed distribution to Richard Parry upon Thayer Parry's death. No deed was thereafter recorded transferring the Gatchell Reservation to Richard Parry.

**{¶7}** As for the prior Cyrena Mathess property (the surface and the other one-half of the oil and gas), Jesse Stalder obtained the property (with co-owner Elizabeth Landefeld). It was then conveyed to Jesse and his wife Lindsay (the Stalders) in a deed recorded December 11, 2012; the deed noted the property was subject to the exception of the 1904 Gatchell Reservation.

{¶8}    The Stalders executed an oil and gas lease with Gulfport on September 15, 2011, providing the exclusive rights to the oil and gas underlying the subject property. The parties say a memorandum of lease was recorded on August 14, 2013.  (There is a suggestion the Stalders believed the 1989 Dormant Mineral Act was self-executing and the Gatchell Reservation had already been automatically deemed abandoned.)  Gulfport only paid the Stalders a signing bonus representing one-half of the 64.73 acres due to the Gatchell Reservation covering the other one-half of the oil and gas.

{¶9}    On April 12, 2012, the Stalders published a notice of intent to declare the mineral interest abandoned in the local newspaper in an attempt to utilize the 2006 Dormant Mineral Act.  There was no attempt to serve the last record holder by certified mail.  The published notice only said it was being served upon Margaret J. Gatchell and her heirs, assigns, and successors to the mineral Reservation created in Monroe County Deed Record Vol. 62, P. 575.  The Stalders recorded an affidavit of abandonment on May 30, 2012 and thereafter notified the recorder to note the abandonment on the deed which created the Gatchell Reservation.

{¶10} In 2015, Gulfport recorded a declaration of pooling and unitization for the Truax unit, which included approximately 20 acres of the subject property.  Production from the Truax well began in the second quarter of 2015.  Gulfport only paid the Stalders one-half of the royalties due under the lease due to the outstanding Gatchell Reservation.

{¶11} The Stalders decided to engage in another abandonment attempt.  They learned Society National Bank and Society National Bank of Cleveland merged into KeyCorp, the holding company for KeyBank National Association also called KeyBank. The Stalders sent a notice of intent to declare the mineral interest abandoned by certified mail to KeyBank at 127 Public Square in Cleveland.  The return receipt showed the certified mailing was received by KeyBank on November 27, 2015, and the name "RON S." was stamped in a box.  (This was not the signature box, which was blank).

{¶12} The notice said it was being served on:  Society National Bank, Trustee; Society National Bank of Cleveland, Trustee; KeyBank; and any other unknown successors and assigns to the mineral interest in the 1968 and 1984 deeds.  The notice cited the location of these deeds in the public record and provided a description of the property.  (The notice did not recite a grantor name in describing these deeds, and thus

the Parry name was not mentioned). The notice also cited the location in the public record for the original Reservation of the one-half of the oil and gas rights.

{¶13} KeyBank did not record an affidavit or claim to preserve. The Stalders recorded an affidavit of abandonment on January 26, 2016, and thereafter notified the recorder to note the abandonment on the deed which created the Gatchell Reservation.

{¶14} On September 23, 2017, Richard Parry and his wife Mallette Parry executed a paid-up oil and gas lease with Gulfport for the Gatchell Reservation. The lease said the effective date was May 16, 2014 *(more than three years before execution)*. A memorandum of lease was recorded September 27, 2017. Richard Parry recorded an affidavit containing a claim to preserve the Gatchell Reservation on June 1, 2018.

{¶15} On April 3, 2018, the Stalders filed a complaint against Richard and Mallette Parry, Gulfport, and the bank (the record holder and prior trustee of the Gatchell Reservation). Specifically, the complaint named: Society National Bank, Trustee; Society National Bank of Cleveland, Trustee; KeyCorp; and KeyBank Corporation. The Stalders also named as defendants the former record holders of the Gatchell Reservation (Margaret Gatchell, Minnie Parry, Georgia Parry, and Thayer Parry), along with their unknown heirs, assigns, and certain named relatives. Default judgment was eventually granted against these individuals (except Richard and Mallette Parry).

{¶16} The Stalders' complaint set forth four claims. The first claim sought a declaratory judgment on abandonment of the Gatchell Reservation under the 2006 DMA, and the second claim sought quiet title to the Gatchell Reservation on this basis. The third and fourth claims were asserted only against Gulfport for breach of lease, seeking the signing bonus and royalties corresponding to the Gatchell Reservation (alleging Gulfport only paid half of the signing bonus and royalties required by the Stalder lease).

{¶17} Gulfport's answer alleged it was not required to pay the signing bonus and royalties corresponding to the Gatchell Reservation because the Stalders did not own it. This answer said the Stalders' notice of abandonment was invalid under the 2006 DMA and there was a savings event.

{¶18} The bank's answer denied the 2015 notice of abandonment was served on Society National Bank, Trustee or Society National Bank of Cleveland, Trustee. The bank

said it was without knowledge as to whether the notice was served on KeyBank, while acknowledging the return receipt for certified mailing which was attached to the complaint.

{¶19} The Parrys filed an answer and a counterclaim seeking a declaratory judgment regarding their ownership of the Gatchell Reservation and asking for quiet title confirming their ownership. They pointed out the 2012 notice of abandonment did not name them or the bank and was not preceded by an attempt at certified mail. The Parrys said the Stalders did not serve them with the 2015 notice of abandonment and only "purportedly attempted to serve" the bank. The Parrys' answer concluded both notices and both affidavits of abandonment were invalid (and their 2017 recorded lease and 2018 affidavit with a claim to preserve were now savings events).

{¶20} On November 30, 2018, Gulfport filed a motion for summary judgment. Gulfport argued the Stalders' abandonment and quiet title claims failed because the Gatchell Reservation was never abandoned by the Parrys. Gulfport argued the 2012 notice of abandonment and the resulting affidavit of abandonment were invalid as the notice was not served by certified mail on the bank, contained only the name of the first record holder, and did not contain the name of the bank (the record holder) or its successor bank. Gulfport then said abandonment was precluded by the time the Stalders served the November 2015 notice on the bank because actual production had been achieved by a holder, pointing to their own production from the Truax well earlier that year (and noting their recorded declaration of pooling and unitization).

{¶21} Gulfport quoted the Stalder lease, wherein the "Signing Bonus" clause provided the Stalders the right to a signing bonus of $3,500 "per net mineral acre the Lessee determines Lessor is owner in fee absolute * * *" and the "Payment Reductions" clause stated: "If Lessor owns a lesser interest in the oil or gas than the entire undivided fee simple estate, then the rentals (except for Delay Rental payments as set forth above), royalties and shut-in royalties hereunder shall be paid to Lessor only in the proportion which Lessor's interest bears to the whole and undivided fee." In accordance, Gulfport concluded it was not required to pay the signing bonus or royalties corresponding to the Gatchell Reservation which was not owned by the Stalders due to their faulty abandonment attempts.

Case No. 20 MO 0010

{¶22} Before any response or cross-motion was filed, the trial court amended the case management order and extended the dispositive motion and response deadlines. A year after Gulfport's summary judgment motion, the Stalders filed a motion for summary judgment on their complaint and on the Parrys' counterclaim.

{¶23} As to their ownership of the Gatchell Reservation, the Stalders' motion stated: Society National Bank, Trustee was the record holder of the Gatchell Reservation as there were no record conveyances after the 1984 deed to the bank as trustee; the deed did not identify the name of the trust; the Stalders could not be expected to guess the name of the trust or find the Summit County estate of the 1984 grantor; KeyBank was the successor to the record holder, which the Stalders' former attorney learned through an online search; the search of Monroe County public records and the search online for the successor bank constituted reasonable due diligence; KeyBank was served by certified mail in November 2015 at the bank's current address, which was the same address listed for the bank's predecessor in the 1984 deed; the Stalders received a return receipt evidencing successful service; no holder responded with an affidavit or claim to preserve; and the Stalders' 2016 affidavit of abandonment was thus effective.

{¶24} In response to Gulfport's argument about production as a savings event, the Stalders emphasized the statutory language requiring "actual production or withdrawal of minerals *by the holder*" which must occur "[w]ithin the twenty years *immediately preceding the date on which notice is served* * * *." (Emphasis added.) R.C. 5301.56(B)(3)(b). The Stalders pointed out the record holder (the bank) did not produce from the land and the Parrys did not sign a lease with Gulfport until 2017, long after the abandonment.

{¶25} The Stalders then quoted the "Title" clause of their lease, which states: "If Lessee receives evidence that Lessor does not have title to all or any part of the right herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved." The Stalders concluded that if the court ruled the Gatchell Reservation was abandoned and reunited with the surface, then the adverse claim would be "fully resolved" and Gulfport would be required to pay to the Stalders the unpaid signing bonus and royalties corresponding to the Gatchell Reservation.

{¶26} Gulfport responded to the Stalders' summary judgment motion by reiterating its argument that there was no abandonment by the Parrys due to production by a holder occurring in 2015 prior to the notice of abandonment. This argument revolved around the 2014 effective date placed in the Parrys' 2017 lease. Gulfport incorporated the arguments from its summary judgment motion (payment liability was dependent on ownership) and also relied on the "Title" clause (allowing Gulfport to withhold payments until full resolution of an adverse claim).

{¶27} On December 9, 2019, in lieu of responding to the Stalders' summary judgment motion, the Parrys filed a motion to enforce a settlement agreement. They alleged the Stalders were invalidly attempting to repudiate a July 2019 settlement by failing to mention it in the summary judgment motion. The Parrys provided emails showing a settlement was reached: a March 27, 2019 offer by the Stalders; a July 3, 2019 acceptance by the Parrys; and a July 5, 2019 confirmation of the settlement by the Stalders. In this settlement, the parties agreed to divide ownership of the Gatchell Reservation so the Stalders would own 75% and the Parrys would own 25% (of the one-half Reservation).

{¶28} In addition to seeking to enforce the settlement, the Parrys moved for attorney's fees related to the Stalders' repudiation of the agreement. In the alternative, the Parrys asked for a Civ.R. 56(F) continuance, noting they stopped preparing to litigate the case and canceled the deposition of the Stalders' former title attorney in reliance on the settlement. The court stayed the case management schedule pending a ruling on the Parrys' motions.

{¶29} The Stalders opposed the motion to enforce settlement. They accused the Parrys of waiting too long to draft a deed and claimed there were two unfulfilled conditions precedent: the Parrys were to obtain title from KeyBank, and Gulfport was to approve the settlement. The Stalders submitted additional emails between the parties. They also opposed the request for a continuance, stating the deposition testimony would be irrelevant and the case was already continued too many times.

{¶30} The Parrys' reply said the emails demonstrated the settlement was not contingent on Gulfport. It was noted the Parrys settled with KeyBank prior to settling with the Stalders and merely offered the courtesy of waiting for the KeyBank deed before

presenting a deed to the Stalders so there would be clarity in the title. The Parrys also attached a Trustee's Deed transferring the Gatchell Reservation from KeyBank to Richard Parry (executed December 12, 2019).

{¶31} On January 27, 2020, the court issued an order enforcing the settlement. The order provided a legal description of the property and cited to Vol. 62, P. 575 and the tax parcel numbers. The court noted the Stalders' claim to the Gatchell Reservation, which was owned by Richard Parry, was based on abandonment under the DMA. The court concluded the Stalders entered a binding and enforceable settlement agreement on July 3, 2019, agreeing to split the ownership of the Gatchell Reservation so the Parrys received 25% of the disputed mineral interest.

{¶32} The court decreed 75% of the disputed property interest "is hereby vested in and owned in fee simple by" the Stalders and 25% "is hereby vested in and owned in fee simple by" the Parrys. The order then concluded: "The Clerk is hereby directed to forward a copy of the order to the Monroe County Recorder, who shall promptly record the Order and enter a marginal notation on the following instrument: Book 62, Page, 575 of the Monroe County Deed Records." The Stalders were ordered to reimburse the recorder for costs associated with the recording and marginal notation.

{¶33} The same day, the court issued an order granting the Parrys' motion for attorney's fees. The court ordered the Stalders to pay $4,757.50 within 14 days, finding this was the amount of fees incurred in enforcing the settlement agreement.

{¶34} On January 30, 2020, the clerk docketed the return of the recorded order. The returned order showed: the clerk forwarded a certified copy of the court's order to the recorder; the recorder stamped the order with volume and page number where it was recorded on January 29, 2020; and the auditor stamped the order to show its transfer review.

{¶35} On May 28, 2020, the Stalders filed a motion asking the court to order Gulfport to place the unpaid signing bonus and royalties in escrow. The Stalders' motion pointed out the January 27, 2020 order enforcing settlement resolved the ownership claims between the Stalders and the Parrys, leaving only the two breach of lease claims against Gulfport pending. They noted this was also discussed with the court in a February

2020 status conference. Instead of ruling on the escrow motion, the court issued its final order on June 1, 2020.

**{¶36}** In this order, the trial court granted the Stalders' motion for summary judgment and denied Gulfport's motion for summary judgment. The court stated: Society National Bank was the holder; the title attorney exercised reasonable due diligence in finding the bank's successor (KeyBank); the identity of the trust was not listed in the 1984 deed; the Stalders could not have discovered the trust; notice of abandonment was served on KeyBank on November 27, 2015; no affidavit or pReservation claim was recorded within 60 days; and the Stalders' affidavit of abandonment was timely filed. The court rejected Gulfport's argument on production "by the holder" noting the bank did not produce minerals or sign a lease and the Parrys did not sign a lease until nearly two years after the notice of abandonment was served. The court cited the lease clause allowing Gulfport to withhold payments "until the adverse claim is fully resolved" if it received evidence the Stalders did not have title to part of the minerals.

**{¶37}** The court concluded: the Gatchell Reservation was deemed abandoned pursuant to the 2006 Dormant Mineral Act and vested in the Stalders; any adverse claim by the Parrys is fully resolved; and the Stalders were entitled to the unpaid signing bonus and royalties from Gulfport for the Gatchell Reservation. The court assessed costs against Gulfport, said there was no just reason for delay, and labeled the judgment a final appealable order.

### POST-JUDGMENT FILINGS

**{¶38}** Gulfport filed a timely notice of appeal of the June 1, 2020 judgment on June 30, 2020. The Parrys filed a notice of cross-appeal on July 13, 2020, which was timely because of the pandemic tolling order. *See* App.R. 4(B)(1) (within the original 30-day appeal time or 10 days of the initial notice of appeal); Ohio Supreme Court, 3/27/2020 Administrative Actions, 2020-Ohio-1166.

**{¶39}** On September 25, 2020, the Parrys filed a Civ.R. 60(B) motion for relief from judgment in the trial court. They also asked this court to issue a limited remand allowing the trial court to rule on their motion. They cited principles of judicial economy without addressing why they waited nearly four months after the trial court's judgment to file their motion for relief in the trial court. By that time, Gulfport's appeal was fully briefed,

Case No. 20 MO 0010

and the Parrys had already filed their own appellant's brief in their cross-appeal (after receiving an extension). The Stalders opposed the remand request and filed their response brief in the cross-appeal at the same time.

**{¶40}** Moreover, in arguing good cause for a limited remand under 7th Dist. Loc.R. 4(A)(1), the Parrys claimed a trial court error can be corrected under Civ.R. 60(B)(1) (which covers mistake, inadvertence, surprise, or excusable neglect). However, it is well-established the mistake discussed in (B)(1) involves the mistake of the parties, not the mistake of the trial court, and an appeal is the remedy for a trial court's mistake (otherwise the movant would be essentially asking for reconsideration of a final judgment). *See, e.g., State v. Brown*, 7th Dist. Mahoning No. 13 MA 172, 2014-Ohio-5824, ¶ 50 ("As Civ.R. 60(B) is not a substitute for an appeal, it cannot be utilized merely to raise mistakes allegedly committed by the trial court"); *Genhart v. David*, 7th Dist. Mahoning No. 10 MA 144, 2011-Ohio-6732, ¶ 17 ("the mistake contemplated by Civ.R. 60(B)(1) is some mistake on the part of the parties, not a mistake of fact or law by the court"); *Gron v. Gron*, 7th Dist. Jefferson No. 07 JE 49, 2008-Ohio-5054, ¶ 27-29. *See also Doe v. Trumbull Cty. Children Servs. Bd.*, 28 Ohio St.3d 128, 131, 502 N.E.2d 605 (1986) ("It is axiomatic, however, that Civ.R. 60(B) may not be used as a substitute for appeal"); *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378, 379, 423 N.E.2d 1105 (1981) ("motions for reconsideration of a final judgment in the trial court are a nullity").

**{¶41}** On November 30, 2020, Gulfport filed a notice of bankruptcy upon which this appeal was automatically stayed. On October 19, 2021, Gulfport filed notice of the lifting of the stay due to the completion of the bankruptcy reorganization, and this case was then reactivated. We begin with the cross-appeal.

CROSS-APPEAL

**{¶42}** In support of their cross-appeal, the Parrys set forth one assignment of error:

"THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT GRANTED SUMMARY JUDGMENT TO CROSS-APPELLEES WHICH IMPLICITLY CONFLICTS WITH ITS PRIOR ORDER ENFORCING THE SETTLEMENT BETWEEN CROSS-APPELLANTS AND CROSS-APPELLEES."

**{¶43}** As set forth in our Statement of the Case, the trial court issued an order enforcing a settlement agreement between the Stalders and the Parrys which granted the Parrys 25% of the Gatchell Reservation. (1/27/20 J.E.). The Parrys are concerned with subsequent language in the June 1, 2020 judgment wherein the trial court granted the Stalders' summary judgment motion without specifying it was only granted against Gulfport. The court also said the Gatchell Reservation was abandoned under the 2006 DMA and vested in the Stalders without mentioning the Stalder/Parry settlement.

**{¶44}** The Parrys do not believe the court intended to reconsider the order enforcing settlement, but they are concerned the June 1, 2020 judgment could be read as potentially conflicting with the January 27, 2020 order enforcing settlement. They cite law supporting the trial court's order enforcing settlement. To demonstrate the impropriety of a decision to sua sponte reconsider that order, the Parrys highlight their reliance on the order when they refrained from responding to the Stalders' motion for summary judgment and from filing their own summary judgment motion. The Parrys point out the Stalders did not appeal the order enforcing the settlement (or the order granting attorney's fees due to the Stalders' repudiation of the settlement). (Cross-Apt. Br. at 2).

**{¶45}** The Stalders respond by explaining they did not appeal the January 27, 2020 order enforcing settlement because it was an interlocutory order which was not appealable due to the lack of Civ.R. 54(B) "no just reason for delay" language. They point out a court can reconsider an interlocutory order. The Stalders then contend the trial court must have reconsidered the order enforcing settlement when it granted their summary judgment motion on June 1, 2020 and declared the Gatchell Reservation abandoned without mentioning the prior settlement with the Parrys.

**{¶46}** The Parrys' reply brief notes an interlocutory order that is not reconsidered merges into the final judgment and an aggrieved party can contest the interlocutory order by appealing from the final judgment. *See Breech v. Liberty Mut. Fire Ins. Co.*, 2017-Ohio-9211, 101 N.E.3d 1199, ¶ 25-31 (5th Dist.) (interlocutory decision to enforce a settlement can be contested by appealing from the final judgment). They also note the Stalders have not currently appealed the court's order enforcing settlement. *See* App.R. 3(C)(1) (cross-appeal of interlocutory order merged into final judgment in case final judgment is reversed). The word merged here is used to indicate an interlocutory order

that remained in effect after the final judgment was entered. *See, e.g., Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 9 (2d Dist.) ("Interlocutory orders, such as most discovery orders, are merged into the final judgment. Thus, an appeal from the final judgment includes all interlocutory orders merged with it, such as the trial court's protective order.")

**{¶47}** Because the Stalders' response brief suggests the trial court reconsidered the January 27, 2020 settlement enforcement order, we begin by determining whether it was a final appealable order as the trial court would lack jurisdiction to reconsider a final appealable order. *See Pitts*, 67 Ohio St.2d at 379. A final order is defined by R.C. 2505.02. As the Stalders and the Parrys both sought declaratory judgments against each other and the January 27, 2020 order enforcing settlement resolved the declaratory judgment claims between the Stalders and the Parrys by specifically declaring their respective rights in the minerals, we start with division (B)(2) and the Supreme Court's holding in *General Accident Ins. Co. v. Insurance Co. of N. America,* 44 Ohio St.3d 17, 22, 540 N.E.2d 266 (1989).

**{¶48}** An order is final if it "affects a substantial right made in a special proceeding." R.C. 2505.02(B)(2). A special proceeding is statutorily defined as "an action or proceeding that is specially created by statute and that prior to 1853 was not denoted as an action at law or a suit in equity." R.C. 2505.02(A)(2).

**{¶49}** The Stalders and the Parrys both sought quiet title. A quiet title action is statutorily set forth in R.C. 5303.01 but was a proceeding which existed prior to 1853. *See, e.g., Porter v. Robb*, 7 Ohio 206, 211 (1835) (where the Supreme Court cited the law on quiet title). Therefore, a quiet title action is not a special proceeding. Appellate courts sometimes view the underlying action to ascertain whether a declaratory judgment ruling is one made in a special proceeding and say if the request for declaratory relief was part of an underlying action that was not a special proceeding, then it does not qualify as a special proceeding, citing the Supreme Court's *Stevens* case. *See Stevens v. Ackman*, 91 Ohio St.3d 182, 188, 743 N.E.2d 901 (2001) (the appellant claimed a wrongful death action was a special proceeding, but the Court found the underlying action was a civil suit for damages). However, quiet title was sought here based on the result of the declaratory judgment action. And, the Supreme Court's *Stevens* case did not involve a declaratory

judgment; rather, it merely involved the denial of summary judgment in a wrongful death action. *Stevens*, 91 Ohio St.3d at 188.

**{¶50}** Declaratory judgments were unknown at common law. *General Accident,* 44 Ohio St.3d at 22. Therefore, the Supreme Court held a declaratory judgment declaring the insurer had no duty to defend affected a substantial right in a special proceeding. *Id.* (where the insurance contract issue was resolved and the underlying tort action remained pending). This court has allowed appeals of declaratory judgments when other claims remain pending *(if there is Civ.R. 54(B) language)*. *Potts v. Unglaciated Industries Inc.*, 2016-Ohio-8559, 77 N.E.3d 415, ¶ 33-34 (7th Dist.) (declaration of continued lease validity in favor of the lessee and denying the lessor's opposing requested declaration affected a substantial right in a special proceeding, even if slander of title claim remained pending).

**{¶51}** Here, the request for relief sought a declaratory judgment on the use of a statutory abandonment proceeding, and the order enforcing settlement declared the parties' respective rights in the minerals. The declaratory judgment statute says "courts of record may declare rights, status, and other legal relations whether or not further relief is or could be claimed." R.C. 2721.02(A). *See also* R.C. 2721.03 ("any person whose rights, status, or other legal relations are affected by a * * * statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status, or other legal relations under it"). The statute specifies: "The declaration has the effect of a final judgment or decree." R.C. 2721.02(A).

**{¶52}** We also note the January 27, 2020 order would be considered a final order under R.C. 2505.02(B)(1), which says an order is a final order if it "affects a substantial right in an action that in effect determines the action and prevents a judgment * * *." R.C. 2505.02(B)(1).

**{¶53}** As to the first part of (B)(1), a substantial right is defined as a right a person is entitled to protect or enforce pursuant to the federal or state constitution, a statute, the common law, or a rule of procedure. R.C. 2505.02(A)(1). The parties do not dispute that various qualifying rights were affected by the trial court's January 27, 2020 order. For instance, R.C. 5301.56 (the DMA) provides a statutory right for a surface owner to attempt to reunite minerals with the surface and for the mineral holder to avoid the abandonment.

Case No. 20 MO 0010

We also make note of the right to file a quiet title action as set forth in R.C. 5303.01 and various real property rights provided by the Ohio Constitution. A substantial right was affected by the order which enforced a settlement on the division of a mineral interest over which both parties had a declaration of ownership under the DMA and sought quiet title. The order declared ownership of the mineral interest by percentages, directed the clerk to send a certified copy of the order to be recorded, and instructed the recorder to record the order and note the ownership in the margin of the deed creating the mineral interest. *See Crum v. Yoder*, 7th Dist. Monroe No. 20 MO 0005, 2020-Ohio-5046, ¶ 32 ("A substantial right would be affected where a trial court issues a declaration on property rights"), citing *Potts*, 2016-Ohio-8559.

{¶54} As for the second aspect of division (B)(1): "For an order to determine the action and prevent a judgment for the party appealing, it must dispose of the whole merits of the cause or some separate and distinct branch thereof and leave nothing for the determination of the court." *State ex rel. Downs v. Panioto*, 107 Ohio St.3d 347, 2006-Ohio-8, 839 N.E.2d 911, ¶ 20. Here, the January 27, 2020 order disposed of all claims set forth by the Stalders against the Parrys and all counterclaims set forth by the Parrys against the Stalders. The order prevented the division of minerals those parties sought in their complaint and counterclaim by allocating the Gatchell mineral Reservation according to their settlement. No claims remained pending between those parties.

{¶55} However, as the Stalders point out, the January 27, 2020 order lacked Civ.R. 54(B) language. "An order of a court is a final appealable order only if the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B), are met." *CitiMortgage Inc. v. Roznowski*, 139 Ohio St.3d 299, 2014-Ohio-1984, 11 N.E.3d 1140, ¶ 10. Civ.R. 54(B) begins by stating:

> **Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. * * *

(Emphasis original.) Civ.R. 54(B).

**{¶56}** Certification under Civ.R. 54(B) "demonstrates that the trial court has determined that an order, albeit interlocutory, should be immediately appealable, in order to further the efficient administration of justice and to avoid piecemeal litigation or injustice attributable to delayed appeals." *Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 11. Civ.R. 54(B) language will "transform a final order into a final appealable order." *Wisintainer v. Elcen Power Strut Co.*, 67 Ohio St.3d 352, 354, 617 N.E.2d 1136 (1993).

**{¶57}** In an appeal under R.C. 2505.02(B)(1), where the claims against one party are resolved by a dismissal order, but the claims against a second party remain pending, the judgment is not appealable without Civ.R. 54(B) language. *See, e.g., State ex rel. Scruggs v. Sadler*, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶ 8. The Supreme Court has also required Civ.R. 54(B) language for an appeal of a declaratory judgment under R.C. 2505.02(B)(2). After holding the trial court's declaration that the insurer had no duty to defend affected a substantial right in the special proceeding of a declaratory judgment action, the Court stated: "Upon finding that this is a final order under R.C. 2505.02, we next must determine if Civ.R. 54(B) applies, and if so, if its requirements were met." *General Accident*, 44 Ohio St.3d at 21-22.[1] As claims between other parties remained pending, the Court held Civ.R. 54(B) applied to the order. *Id.* at 22-23 (the declaratory judgment was final, notwithstanding the pending claims in the action, *due to the trial court's compliance with Civ.R. 54(B)* by using "no just reason for delay" language).[2]

**{¶58}** Here, the trial court's January 27, 2020 order enforcing settlement declared the rights to the minerals and quieted title (with recordation of the order and notation on

---

[1] This decision was later maintained (but distinguished) by the Supreme Court. *See Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221, 904 N.E.2d 863, ¶ 4, 21-22, 24-27 (an order declaring there was insurance coverage without addressing damages was made in a special proceeding but was not a final order because a substantial right was not yet affected, even though there was Civ.R. 54(B) language).

[2] We note Civ.R. 54(B) language is not necessary if the legislature expressly determined a certain type of order is final. *Sullivan*, 122 Ohio St.3d 83 at ¶ 9, 12 (where a specific statute said an order denying a political subdivision immunity "is a final order," Civ.R. 54(B) language was not required to make the denial of immunity a final, appealable order). This concept has not been extended to the general declaratory judgment statute, R.C. 2721.02(A), even though it says "[t]he declaration has the effect of a final judgment or decree."

Case No. 20 MO 0010

the margin of the deed). However, the court did not use Civ.R. 54(B) language in the January 27, 2020 judgment (or in the order granting attorney's fees due to the settlement enforcement).

**{¶59}** Because the claims between the Stalders and Gulfport remained pending, Civ.R. 54(B) certification was required in order to allow an appeal from the January 27, 2020 judgment. This leads to the second sentence of Civ.R. 54(B), which provides:

> In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision *is subject to revision* at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

(Emphasis added.) Civ.R. 54(B). Accordingly, although a trial court cannot reconsider a final judgment, an order which remains interlocutory under Civ.R. 54(B) is subject to reconsideration by the trial court. *See Pitts*, 67 Ohio St.2d at 380-381, fn.1. *See also Scarpelli v. Young*, 2019-Ohio-4880, 149 N.E.3d 206, ¶ 20 (7th Dist.).

**{¶60}** The next question is whether the trial court, in fact, reconsidered the January 27, 2020 order (which enforced the settlement, divided the Gatchell mineral Reservation 75% to the Stalders and 25% to the Parrys in accordance with the settlement, and quieted title with a resulting recordation of the order and notation of the margin of the deed). The Stalders claim the language of the trial court's June 1, 2020 summary judgment shows the trial court changed its mind as to the January 27, 2020 order. For the following reasons, we find no indication the trial court attempted to reconsider its prior order, and we conclude the orders do not conflict.

**{¶61}** Initially, we note that four months after the settlement enforcement order, the Stalders filed a motion asking the trial court to order Gulfport to escrow funds "until the Court issues an opinion as to the remaining breach of contract count pending in Plaintiffs' Motion for Summary Judgment." In this motion, the Stalders specifically reminded the court, in boldface type, that the court's January 27, 2020 order resolved the

Case No. 20 MO 0010

ownership issue of the Gatchell Reservation set forth in counts one and two of their complaint. These were the counts related to the Parrys. The Stalders also indicated this was discussed with the court during a February 2020 status call. The Stalders did not ask the court to reconsider the enforcement of the settlement and instead specifically reminded the court that the only remaining claims were those asserted by the Stalders against Gulfport. The court issued its summary judgment within days of the Stalders' escrow motion.

{¶62} Contrary to the Stalders' suggestion, it would have been improper for the trial court to sua sponte reconsider the settlement enforcement order *by granting summary judgment against the Parrys* without providing them notice and an opportunity to be heard. Although generally an interlocutory order can be reconsidered sua sponte without notice, a non-movant has the right to respond to summary judgment. *See* Civ.R. 56(C).

{¶63} After the Stalders' motion for summary judgment and before the response was due, the Parrys filed a motion to enforce settlement. In the alternative, they filed a Civ.R. 56(F) motion for continuance due to the need for additional discovery and their cancellation of a deposition in reliance on the settlement agreement. On the day the Parrys' response to the Stalders' summary judgment motion would have been due, *the court issued a stay* of the case management schedule pending its decision on the Parrys' motions, which relieved the Parrys of the obligation to respond to the motion for summary judgment at that time.

{¶64} The trial court then granted the Parrys' motion to enforce the settlement, ensured its order was recorded, and awarded attorney's fees for the repudiation. No party in the Parrys' position at that time would have subsequently filed a response to the pending summary judgment motion (or filed their own motion for summary judgment). Under these circumstances, the Parrys would have had the right to notice that the settlement enforcement was being reconsidered and the right to respond to the Stalders' request for summary judgment before any order was entered eliminating their newly-recorded property rights.

{¶65} However, the trial court did not violate the notice and opportunity to respond principles when issuing the June 1, 2020 judgment as this judgment was merely

addressing the remaining issues in the case. The trial court did not expressly declare it was reconsidering its January 27, 2020 order enforcing settlement or mention any item relevant to that decision. Nor did the court eliminate the decision ordering the Stalders to pay attorney's fees incurred by the Parrys as a result of their motion to enforce settlement. For instance, the June 1, 2020 judgment did not order the Parrys to reimburse the attorney's fees the Stalders were ordered to pay as a result of their improper repudiation of the settlement agreement. The award of attorney's fees was to be paid within 14 days of the January 27, 2020 order, and no stay of that award was sought from the trial court or granted.

{¶66} Notably, the January 27, 2020 settlement enforcement order instructed the clerk to forward a certified judgment to the county recorder who was instructed to record the order and enter a marginal notation in the deed. The order also directed the Stalders to promptly reimburse the recorder for the costs associated with the recording and marginal notation. *See* R.C. 5303.31 (in an action to quiet title: "The clerk of the court shall cause to be recorded in the deed records of each county in which any part of the real property lies, a certified copy of the judgment or decree determining the interests of the parties. The usual fees of the clerk and recorder shall be taxed as part of the costs of the case.") In contrast, the court did not order any recording to take place to effect its June 1, 2020 judgment making findings on abandonment and vesting under the DMA. The prior quieting of title remained unaffected.

{¶67} The language in the June 1, 2020 summary judgment entry addressing abandonment under the DMA must be read in context. The court's conclusions about the effect of the 2015 notice of abandonment did not implicitly show the court was reconsidering its decision to enforce the 2019 settlement between the Stalders and the Parrys. Even with the settlement between the Stalders and the Parrys on the abandonment and quiet title claims, the trial court was forced to make a decision on the application of the DMA in order to address Gulfport's defense. That is, Gulfport argued the 2015 notice of abandonment did not result in abandonment, the Gatchell Reservation was thus not owned by the Stalders, and thus Gulfport was not required to pay the remaining signing bonus and royalties.

**{¶68}** Gulfport's motion was filed in November 2018, long before the settlement controversy arose. A year later, the Stalders' filed their motion for summary judgment (also containing a response to Gulfport's motion). The Stalders' motion predicted some of the arguments they assumed the Parrys would assert against abandonment. These motions were both filed before the Parrys filed their motion to enforce settlement and therefore before the court issued its order to enforce settlement.

**{¶69}** After the settlement enforcement order, the only remaining claims were the breach of lease claims set forth by the Stalders against Gulfport. To address breach of lease for failing to pay the entire signing bonus and royalties, the court had to consider the arguments presented by Gulfport and the Stalders relevant to these claims and the defenses thereto. This required the trial court to address the Stalders' argument that their 2015 use of the DMA was valid and resulted in abandonment, regardless of their later settlement with the Parrys. (In determining that issue, the trial court could consider all of the Stalders' arguments as to why abandonment occurred when considering whether Gulfport was required to pay the signing bonus and past royalties corresponding to the Gatchell Reservation.)

**{¶70}** Finally, a decision reconsidering the order enforcing settlement would have been reversible under the facts of this case. The January 27, 2020 order was already recorded and a marginal notation was made on the deed by the recorder. Attorney's fees were ordered for the Stalders' repudiation and presumably paid (as they were ordered to be paid within 14 days). The court's decision enforcing settlement was supported by the evidence presented by the Parrys and was also supported by the evidence presented by the Stalders' own response.

**{¶71}** "A compromise agreement, * * * like other contracts, requires a definite offer and an acceptance thereof." *Noroski v. Fallet*, 2 Ohio St.3d 77, 79, 442 N.E.2d 1302 (1982) (showing a meeting of the minds). A motion to enforce a settlement agreement in pending litigation is a proper motion. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 13-15, 33 (even "an oral settlement agreement may be enforceable if there is sufficient particularity to form a binding contract"). To be a valid settlement agreement, the agreement must have reasonably certain and clear terms. *Id.* at ¶ 17 (but all agreements have some degree of indefiniteness and uncertainty).

{¶72} A condition precedent to an enforceable contract must be performed before the contract is effective. *Mumaw v. Western & Southern Life Ins. Co.*, 97 Ohio St. 1, 11, 119 N.E. 132 (1917). A condition precedent is not favored by the law, and courts avoid construing provisions to be such unless the agreement plainly shows the contract is not effective unless the condition occurred. *Coldwell v. Moore*, 2017-Ohio-526, 85 N.E.3d 262, ¶ 31 (7th Dist.).

{¶73} The Parrys and the Stalders both relied on email chains as their evidence. If a motion to enforce a settlement agreement presents a question of contract law, the review is de novo. *See Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). The writings exchanged on behalf of the parties by their attorneys showed an offer and acceptance of a settlement agreement, whereby the Stalders would own 75% and the Parrys would own 25% of the Gatchell Reservation.

{¶74} These writings did not show the settlement with the Parrys was contingent on the speedy receipt of a deed from KeyBank. In addition, the deed from KeyBank was received before the court's order enforcing settlement. Furthermore, the writings did not in any way refer to the settlement between the Parrys and Stalders being contingent on a separate settlement between the Stalders and Gulfport.

{¶75} Even viewing parol evidence in the form of emails with other parties, the Stalders' condition precedent theory would still not be supported. In fact, as the evidence showed other parties were still working toward their own settlement, the extrinsic evidence would further support the conclusion that there was no provision that "time was of the essence" for executing a deed to reflect the settlement.

{¶76} In conclusion, if the trial court had reconsidered the settlement enforcement order, we would find that decision reversible. However, we conclude the trial court did not explicitly or implicitly reconsider the order enforcing settlement. Although the court did not expressly incorporate the settlement into its final order ruling on the remaining claims of the Stalders against Gulfport, the settlement order resolving the claims between the Stalders and the Parrys merged into the final summary judgment and remained effective.

{¶77} This means the Parrys are the owners of 25% of the Gatchell Reservation

as of July 3, 2019, the date the trial court said the settlement was entered.[3] The trial court's June 1, 2020 summary judgment resolved the issue of ownership prior to the settlement agreement, which provided for ownership going forward. Accordingly, we conclude the January 27, 2020 judgment (enforcing the settlement between the Parrys and the Stalders with the resulting recordation) and the June 1, 2020 summary judgment (resolving the issues between the Stalders and Gulfport and affirmed under our subsequent analysis) shall be read together.

<u>GULFPORT'S FIRST ASSIGNMENT OF ERROR:  ABANDONMENT</u>

{¶78} Gulfport sets forth three assignments of error relating to the trial court's June 1, 2020 summary judgment. The first assignment of error contends:

"THE TRIAL COURT ERRED IN GRANTING THE STALDERS' MOTION FOR SUMMARY JUDGMENT AND DENYING GULFPORT'S MOTION FOR SUMMARY JUDGMENT ON THE STALDERS' QUIET TITLE ACTION UNDER THE OHIO DORMANT MINERAL ACT."

{¶79} In moving for summary judgment, Gulfport argued it was not in breach of the oil and gas lease as it was not required to pay a signing bonus or royalties for minerals the Stalders did not own. To show a lack of ownership, Gulfport argued the Stalders' abandonment attempts in 2012 and 2015 were both unsuccessful under the DMA.

{¶80} First, Gulfport pointed out the Stalders' 2012 publication of notice of abandonment and the resulting affidavit of abandonment were invalid because:  there was no attempt to serve the notice on the bank (as the last record holder) by certified mail before publication; the published notice did not contain the name of the bank (the record holder); and it only contained the name of the first record holder (who conveyed her interest in 1938 as the public record clearly showed).

{¶81} The Stalders' response to Gulfport's motion (contained in their cross-motion for summary judgment) did not contest Gulfport's contention as to the invalidity of the

---

[3] It is black-letter law that a contract in the form of a compromise agreement is formed when there is acceptance after an offer and a mutual meeting of the minds on the terms. *See Noroski*, 2 Ohio St.3d at 79. As a contract is enforceable once formed, it follows that the effective date of a contract is the date it was formed if no other date is expressed therein. *See generally Kostelnik*, 96 Ohio St.3d 1 at ¶ 16 (a contract is enforceable when there is a meeting of the minds as to the essential elements of a contract). *See also Shell v. Amalgamated Cotton Garment*, 871 F.Supp. 1173, 1180 (D.Minn.1994) ("as a matter of federal common law the settlement was effective whenever the Shells agreed to settle and compromise their claims, whether that agreement was oral or in writing").

2012 notice of abandonment. The Stalders suggested the 2012 issue could be addressed later if they lost their argument on the validity of the 2015 notice of abandonment. Contrary to this suggestion, they could not reserve argument on the 2012 issue for some future proceeding as it was not only their summary judgment motion at issue. Rather, we point out: Gulfport raised the issue in their motion; the law supported Gulfport's position; the Stalders had the obligation to respond if they had arguments supporting the validity of the 2012 notice; and undisclosed arguments are not preserved in the trial court. Additionally, the undisclosed arguments are not raised in the Stalders' brief on appeal in the alternative. Yet, they still erroneously seem to suggest they could still support the 2012 notice on remand (if we agreed with Gulfport's argument on the invalidity of the 2015 abandonment process).

{¶82} In any event, the issue with the 2015 abandonment that Gulfport raises here lacks merit. Gulfport contends the Gatchell Reservation could not be deemed abandoned at a time when the minerals were being produced (by Gulfport).[4] Gulfport claims abandonment was precluded by the time the Stalders served the November 2015 notice on the bank (as the record holder) because actual production had been achieved by a holder. Gulfport points to the recorded declaration of pooling and unitization affecting the Gatchell Reservation and the subsequent production from the Truax well which began in the second quarter of 2015.

{¶83} The DMA provides various savings events which preclude abandonment if occurring "[w]ithin the twenty years immediately preceding the date on which notice is served or published * * *." R.C. 5301.56(B)(3). Here, Gulfport relies on the following statutory savings event:

> There has been actual production or withdrawal of minerals by the holder
>
> from the lands, from lands covered by a lease to which the mineral interest

---

[4] We note the Parrys' answer and counterclaim suggested the 2015 notice of abandonment was invalid because it failed to name them as the true holders (via inheritance, citing an estate in another county which did not refer to the mineral interest) and because there was no attempt to serve the notice on them by certified mail; there was also a suggestion the bank was not actually served by certified mail. As Gulfport acknowledges, Gulfport's summary judgment filings did not adopt these arguments, even though the Stalders' summary judgment motion argued the Parrys' suggestions lacked merit. The trial court found the 2015 notice was properly served on the bank as the last record holder at the last known address after reasonable due diligence in locating a successor holder (where the trust was not identified on the deed), and this ruling is not challenged on appeal.

is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations, under sections 1509.26 to 1509.28 of the Revised Code, in which the mineral interest is participating, provided that the instrument or order creating or providing for the pooling or unitization of oil or gas interests has been filed or recorded in the office of the county recorder of the county in which the lands that are subject to the pooling or unitization are located.

R.C. 5301.56(B)(3)(b).

**{¶84}** The issue is whether the early-2015 production was "by the holder." The DMA defines a holder as "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." R.C. 5301.56(A)(1).

**{¶85}** Gulfport states production was "by a holder" because: Richard Parry became a holder when Thayer Payer died in 1996; Gulfport began production in the second quarter of 2015, which was before the November 2015 notice of abandonment sent by the Stalders by certified mail; Richard and Mallette Parry signed a lease with Gulfport in 2017; and the Parry lease said its effective date was in 2014 (prior to the notice of abandonment and prior to the commencement of production).[5]

**{¶86}** The Stalders assert a lease with the owner of half the minerals cannot be backdated in an attempt to claim past production was by a holder under the DMA. They emphasize the statutory language: "Within the twenty years immediately preceding the

---

[5] Rather than argue Gulfport's production was actually "by" Richard Parry as the holder, Gulfport frames itself as the holder (successor of Richard), relying on the statutory definitions of holder and mineral interest and the case law stating a lease is a fee simple determinable. *See Browne v. Artex Oil Co.*, 158 Ohio St.3d 398, 2019-Ohio-4809, 144 N.E.3d 378, ¶ 23 (observing the lease is a fee simple determinable in the mineral estate with a reversionary interest retained by the lessor); R.C. 5301.56(A)(3) (defining mineral interest as "a fee interest in at least one mineral regardless of how the interest is created and of the form of the interest, which may be absolute or fractional or divided or undivided"). The Stalders contest Gulfport's labeling of itself as a holder under the DMA. Nevertheless, the precise issue of whether Gulfport became a holder through the Parry lease is irrelevant in this case because Richard Parry was a holder at the time of Gulfport's production and Gulfport only asserts its status as a holder via the lease signed by him. The question is whether the production was "by a holder" *in the relevant time period*, whether by Richard Parry or by Gulfport *as his authorized lessee*.

date on which notice is served or published * * * There has been actual production or withdrawal of minerals by the holder * * *."  R.C. 5301.56(B)(3)(b).

**{¶87}** As the trial court pointed out, the bank (as the record holder) did not participate in production of the Gatchell mineral Reservation in any manner.  Although Richard Parry was not a record holder, it is not disputed that he was an equitable holder after Thayer Parry's death (as the bank held the interest in his trust which was to be distributed to Richard Parry upon his death).  *See Warner v. Palmer*, 7th Dist. Belmont No. 18 BE 0012, 2019-Ohio-4078, ¶ 19-20; *Warner v. Palmer*, 7th Dist. Belmont No. 14 BE 0038, 2017-Ohio-1080, ¶ 25-26, 28 (a holder includes a successor of a holder whether on the record or not); *M&H Partnership v. Hines*, 7th Dist. Harrison No. 14 HA 004, 2017-Ohio-923, ¶ 19 (holder is defined broadly and includes those who may derive rights from the record holder such as by testate or intestate succession).

**{¶88}** However, there was no summary judgment evidence indicating that the production occurring prior to the 2015 notice of abandonment, qualified as production "by" a holder at that time (i.e., by Richard Parry or his lessee through a lease of his mineral interest).

**{¶89}** In 2011, Gulfport entered a lease with the Stalders, who owned the surface and half of the minerals at that time (and who may have believed they owned all the minerals under the now-defunct theory that the 1989 DMA was self-executing).  The 2011 Stalder lease was not a title transaction savings event with regards to the Parrys' mineral interest.  *See Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285, ¶ 27-28 (7th Dist.) (the recording of a lease between the producer and the surface owner was not a savings event for the mineral owners who were never parties to the lease; the minerals were not involved in a title transaction since a person can only convey what he owns).  This is not disputed here.

**{¶90}** After production began and after the 2015 notice of abandonment, Gulfport entered a lease with the Parrys (in 2017).  The insertion of a 2014 effective date into a 2017 lease does not show the past production occurring in 2015 was "by" the new lessor under the DMA and the timeframe set forth therein.  Otherwise, the settling of trespass and conversion claims between a producer and a mineral owner could retroactively invalidate a notice of abandonment served on the mineral owner by a surface owner (a

surface owner who owned at least half of the minerals and allowed drilling under a lease with that very producer).  There is no indication such a result is contemplated by the DMA.

**{¶91}**  Instead, the plain language of the DMA relied upon by the Stalders shows that in order to constitute a savings event, production had to occur before the notice of abandonment was served and this production had to be "by" a person who occupied the status of holder at the time.  By the time the production was associated with the Parrys, Richard Parry was no longer a holder (under the trial court's DMA analysis).  Therefore, Gulfport's first assignment of error is overruled.

<u>ASSIGNMENT OF ERROR TWO:  SIGNING BONUS</u>

**{¶92}**  Gulfport's second assignment of error states:

"THE TRIAL COURT ERRED IN GRANTING THE STALDERS' MOTION FOR SUMMARY JUDGMENT AND DENYING GULFPORT'S MOTION FOR SUMMARY JUDGMENT ON THE STALDERS' BREACH OF LEASE CLAIM FOR UNPAID SIGNING BONUS."

**{¶93}**  Gulfport argues that even if this court overrules the first assignment of error (and finds Gulfport's production did not invalidate the Stalders' 2015 abandonment attempt), the Stalders are still not entitled to the signing bonus corresponding to the Gatchell Reservation.   Gulfport points out that when the Stalder lease was executed in 2011 and for many years thereafter, the Stalders were not the owners of the Gatchell Reservation.  The trial court found the November 27, 2015 notice of abandonment was valid, the January 26, 2016 affidavit of abandonment was timely, no timely claim or affidavit was filed in response, and the Stalders' thereafter submitted to the recorder a notice of failure to file a response.

**{¶94}**  The DMA states:  "Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if the requirements established in division (E) of this section are satisfied and none of the [items in division (B) apply, such as a savings event]."  R.C. 5301.56(B).  The cited division (E) provides for service of the notice of abandonment and the timely recording of the affidavit of abandonment. R.C. 5301.56(E)(1)-(2) (file affidavit of abandonment with recorder at least

<u>Case No. 20 MO 0010</u>

thirty but not later than sixty days after the date on which the notice is served or published). Thereafter, the DMA provides:

> the owner of the surface of the lands subject to the interest who is seeking to have the interest deemed abandoned and vested in the owner shall file in the office of the county recorder of each county where the land that is subject to the mineral interest is located a notice of failure to file. * * * Immediately after the notice of failure to file a mineral interest is recorded, the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest * * *.

R.C. 5301.56(H)(2).

**{¶95}** Gulfport states the Stalders were not deemed the owners under the DMA until 4 years after they entered the lease. Gulfport notes that when a lease says the signing bonus depends on ownership, the signing bonus can be paid proportionate to the ownership percentage. *See Board of Edn. Toronto City Schools v. American Energy Utica LLC*, 2020-Ohio-586, 152 N.E.3d 378, ¶ 42, 48, 60-61 (7th Dist.). Gulfport paid the Stalders for one-half of the minerals but refused to pay the signing bonus corresponding to the other one-half (the Gatchell Reservation) on the basis that it was owned by the Parrys. Gulfport then argues the Stalders were only entitled to the signing bonus if they owned the minerals within 90 days of the September 15, 2011 lease signing. In the "Signing Bonus" clause of the 2011 lease, Gulfport agreed to pay the Stalders a signing bonus of $3,500 "per net mineral acre the Lessee determines Lessor is the owner in fee simple absolute within ninety (90) calendar days from the date the last party signs this lease."

**{¶96}** However, Gulfport's summary judgment motion did not even mention the lease language it now relies upon in arguing a 90-day time deadline for ownership. Gulfport's motion twice informed the trial court the lease required Gulfport to pay the Stalders "a signing bonus of Three-Thousand, Five-Hundred and 00/100 Dollars ($3,500) per net mineral acre the Lessee determines Lessor is owner in fee simple absolute." (11/30/18 S.J. Mot. at 5, 10). The sentence was stopped with a period after "fee simple absolute" without even an indication there was additional language. Gulfport's only argument was that the Stalders *never* became the owner of the Gatchell Reservation

(because of the failed abandonment attempt in 2012 and the allegation that the 2015 attempt failed due to production earlier that year, which was alleged to be "by the holder").

**{¶97}** The Stalders' cross-motion for summary judgment argued they were entitled to the signing bonus for the Gatchell Reservation because the mineral interest was abandoned and deemed vested in them under the DMA (due to their 2015 notice of abandonment). They cited the "Title" clause of the lease, which states:

> If Lessee receives evidence that Lessor does not have title to all or any part of the right herein leased, Lessee may immediately withhold payments that would be otherwise due and payable hereunder to Lessor until the adverse claim is fully resolved.

The Stalders reasoned: if the trial court agreed they successfully utilized the DMA to reunite the minerals with the surface, then the adverse claim would be fully resolved and they would be entitled to the withheld signing bonus.

**{¶98}** Gulfport's response reiterated the argument that production barred the 2015 abandonment proceedings and briefly argued the Stalders' citation to the "Title" clause showed Gulfport was not yet in breach of lease because it was not required to pay the signing bonus "until" the trial court resolved the abandonment and quiet title claims (i.e., if the issue of mineral ownership under the DMA was resolved in the Stalders' favor). (12/13/19 Opp. Memo. at 6). Therefore, at no point in the summary judgment proceedings did Gulfport state the Stalders were not entitled to a signing bonus unless they owned the minerals in 2011. Rather, the arguments they set forth were specifically said to revolve around the trial court's decision on whether or not the Stalders validly employed the DMA to reunite the one-half mineral interest in the surface (in 2012 or 2015).

**{¶99}** As the Stalders point out, surface owners are often permitted to cure title issues under the express terms of the lease or with subsequent consent and ratification of the lessee. *See Board of Edn.,* 2020-Ohio-586 at ¶ 62 (noting the surface owner's utilization of the DMA could be a way to cure a lack of clear mineral title existing when the lease was executed). And here, Gulfport (who was the Stalders' lessee) actually produced the minerals (more than two years before entering a lease with the Parrys). As Gulfport did not raise any contention involving an expired signing bonus deadline or an inability to cure, the Stalders had no opportunity to address these issues below.

Case No. 20 MO 0010

{¶100} "The appellate court need not rule on a new legal argument which was waived by failing to raise it with the trial court when responding to a summary judgment motion." *Hanick v. Ferrara*, 7th Dist. Mahoning No. 19 MA 0074, 2020-Ohio-5019, ¶ 115, citing *Union Loc. Sch. Dist. v. Grae-Con Constr. Inc.*, 2019-Ohio-4877, 137 N.E.3d 122, ¶ 30-32 (7th Dist.). The fact an appellate court reviews summary judgment de novo does not provide a party a second chance to raise arguments that should have been raised before the trial court. *Hanick*, 7th Dist. No. 19 MA 0074 at ¶ 116, citing *National College Student Loan v. Irizarry*, 7th Dist. Mahoning No. 14 MA 50, 2015-Ohio-1798, ¶ 31.

{¶101} Gulfport's failure to raise a cure deadline argument in the summary judgment proceedings precludes it from relying on the argument in its appeal. Gulfport set forth one argument as to the signing bonus: it was not required to pay it unless and until the court ruled in favor of the Stalders on the abandonment issue. The trial court ruled in favor of the Stalders on the abandonment issue and thus found the Stalders were entitled to the signing bonus. Gulfport's appeal of this decision fails due to our holding under the first assignment of error. Accordingly, as limited by the argument raised below, Gulfport's argument fails. Gulfport therefore owes the Stalders the signing bonus on their agreed share of the Gatchell Reservation. This assignment of error is overruled.

ASSIGNMENT OF ERROR THREE: ROYALTIES

{¶102} Gulfport's third and final assignment of error contends:

"THE STALDERS ARE NOT ENTITLED TO ROYALTY PAYMENTS FOR PRODUCTION FROM THE GATCHELL RESERVATION ACREAGE BECAUSE THE STALDERS DO NOT OWN THE GATCHELL RESERVATION."

{¶103} In addition to alleging breach of lease for failure to pay the signing bonus for the Gatchell Reservation, the Stalders' complaint alleged breach of lease for failure to pay royalties corresponding to the Gatchell Reservation. (Gulfport only paid the Stalders royalties in proportion to their ownership of the other one-half of the minerals.) Arguing they were not in breach of lease on the matter of royalties, Gulfport's motion for summary judgment pointed out the Stalders were not entitled to royalties under their lease for acreage they did not own. Gulfport cited the "Payment Reductions" clause of the lease, which stated:

> If Lessor owns a lesser interest in the oil or gas than the entire undivided fee simple estate, then the rentals (except for Delay Rental payments as set forth above), royalties and shut-in royalties hereunder shall be paid to Lessor only in the proportion which Lessor's interest bears to the whole and undivided fee.

To show a lack of ownership, Gulfport relied on the argument that the Stalders' DMA abandonment attempts were invalid.

**{¶104}** The Stalders' cross-motion and response argued Gulfport's production was not attributable to production by the Parrys and was therefore not a savings event. The Stalders then cited the aforementioned "Title" clause, which allowed Gulfport to withhold payments (upon receipt of evidence as to a lack of title to any part of the minerals) but only "until the adverse claim is fully resolved."

**{¶105}** Gulfport's response agreed they would not be in breach of lease (yet) due to this clause. Gulfport emphasized the "Title" clause allowed them to withhold payments *until* the court ruled on the abandonment/ownership issue. If the court found the abandonment occurred as result of the 2015 notice of abandonment, then Gulfport would be liable to pay the unpaid royalties to the Stalders (through any future lack of ownership such as via settlement with the Parrys).

**{¶106}** Likewise, on appeal, *Gulfport states their success on the third assignment of error is dependent on their success under the first assignment of error.* *See* Gulfport's Brief at 9, 14-15 (stating the Stalders are not entitled to additional royalties "because the Stalders do not own the Gatchell Reservation * * * because there was production of oil and gas from the Property by a holder within twenty years" and if the 2015 abandonment was successful, then Gulfport's alternative argument only applies to the signing bonus claim); Gulfport's Reply Brief at 1, 4 (stating the first and third assignments of error were based on the argument that the Gatchell Reservation was never abandoned under the DMA, and specifying it was only the second assignment of error which did not depend on their DMA argument).

**{¶107}** As the first assignment of error is overruled, this assignment correspondingly lacks merit and is overruled.

## CONCLUSION

**{¶108}** For the foregoing reasons, Gulfport's assignments of error are overruled as the Stalders obtained the Gatchell Reservation through the DMA and were entitled to the resulting signing bonus and royalties. The trial court's June 1, 2020 decision granting summary judgment against Gulfport is affirmed.

**{¶109}** As to the Parry's cross-appeal, the June 1, 2020 summary judgment resolved the issues that remained between Gulfport and the Stalders and did not disturb the prior recorded order enforcing the settlement between the Parrys and the Stalders. The January 27, 2020 order enforcing settlement merged into the later summary judgment related to Gulfport and remains effective. Therefore, our decision herein affirming the June 1, 2020 summary judgment leaves the January 27, 2020 order enforcing the settlement in effect.

Donofrio, P J., concurs.

D'Apolito, J., concurs.

_____

For the reasons stated in the Opinion rendered herein, Gulfport's assignments of error are overruled. The trial court's June 1, 2020 decision granting summary judgment against Gulfport is affirmed. The January 27, 2020 order enforcing the settlement merged into the trial court's later summary judgment related to Gulfport and remains effective. Therefore our decision herein affirming the June 1, 2020 summary judgment leaves the January 27, 2020 order enforcing the settlement in effect. Costs to be taxed against the Appellant, Gulfport.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**